# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

BRIAN ALEXIS PATRON LOPEZ (4),

      Defendant.

Case No.: 3:21-CR-1683-WQH

**ORDER**

Hayes, Judge:

      The matter before the Court is the "Omnibus Motion to Recuse the United States Attorney's Office for the Southern District of California and the FBI's San Diego Field Office; Request for an Evidentiary Hearing, and Motion to Compel," ("Motion to Recuse," ECF Nos. 250 (redacted version), 262 (unredacted version, filed under seal)), filed by Defendant Brian Alexis Patron Lopez ("Patron").

## I.    Background

      On September 29, 2022, the Government filed a three-count Second Superseding Indictment charging Defendants Jonathan Emmanuel Montellano-Mora and Patron with intentional killing while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A), hostage taking resulting in death in violation of 18 U.S.C. § 1203, and conspiracy to take hostages resulting in death in violation of 18 U.S.C. § 1203. (ECF No. 94.) The Second Superseding Indictment alleges that, between May 28, 2020 and May 31, 2020, the charged Defendants and others kidnapped and murdered M.A.R., a

United States citizen, at a location outside the United States while engaged in a drug trafficking conspiracy.

On January 27, 2025, Patron filed the Motion to Recuse, requesting that the Court issue an order "to recuse the United States Attorney's Office for the Southern District of California and the FBI's San Diego Field Office on grounds that 'a conflict of interest exists as would render it unlikely that [Mr. Patron] would receive a fair trial.'" (ECF No. 262 at 1 (quoting Cal. Penal Code § 1424(a)(1).) The basis for the motion is the recent disclosure by the Government that a Special Agent of the Federal Bureau of Investigation ("FBI") began dating the brother of two witnesses in this case—one being a cooperating codefendant and the other a material witness who was interviewed and deported eight months prior to Patron being charged.[1] Patron requests that the Government "disclose the date that [the Special Agent and her boyfriend] met, how they met, how and when [the Special Agent] learned that her lover was the brother of [Patron's codefendant and the material witness], their written communications regarding the case, and all communications in which [the Special Agent] either received or disseminated case information to anyone within or outside of the FBI/USAO." *Id.* at 4. Patron also "requests the production, from [the Special Agent] and her boyfriend, of [the deported material witness'] location." *Id*. Patron "requests an evidentiary hearing in which he can make an inquiry of [the Special Agent], her boyfriend, and [the boyfriend's codefendant brother]." *Id*. Patron contends:

> [The Special Agent's] romantic relationship with the brother of two witnesses (one of whom is a cooperating codefendant and will testify against Mr. Patron at his trial) creates an incurable conflict of interest between the FBI, the USAO for the SDCA, and Mr. Patron. Accordingly, Mr. Patron requests that the Court recuse both the FBI's San Diego Field Office and the Southern District of California and have a conflict-free trial team designated for Mr. Patron's upcoming trial before this Court.

---

[1] Patron filed a version of the Motion to Recuse on the public docket, which redacted the names of the Special Agent at issue, her boyfriend, and her boyfriend's two brothers. (ECF No. 250.) Patron also filed an unredacted version of the Motion to Recuse under seal, which names all relevant individuals. (ECF No. 260.) This Order is filed on the public docket, and the Special Agent, her boyfriend, and her boyfriend's brothers will not be named herein.

*Id.* at 4–5.

On February 3, 2025, the Government filed a Response in opposition to the Motion to Recuse. (ECF No. 260.) The Government submits an affidavit from the Special Agent at issue.[2] In the affidavit, the Special Agent states that she joined the 50-agent San Diego "Strike Force" in September 2023, which was her first assignment after completing her agent training at the FBI Academy. (ECF No. 260-1 at 1.) The Special Agent states that, in June 2024, she drove Patron—whose name she did not remember—from the FBI's San Diego headquarters to the Metropolitan Correctional Center ("MCC") in downtown San Diego. She states that, other than directing Patron where to stand and go at the MCC, she had no conversation with Patron and she did not know that Patron had codefendants. She states that she was recently informed that she accessed an FBI report related to Patron's case on July 15, 2024. She states that she does not remember accessing this report, but she previously checked reports written by a senior member of the Strike Force "to assist [her] in properly formatting [her reports]." *Id.* at 2. She asserts that "I may have accessed this report to determine how best to format my report in a different investigation." *Id.*

The Special Agent states in her affidavit that, on November 26, 2024, she met an individual on a dating application. She states that she did not list her job on the dating application. She states that, after they started communicating, he told her that he was a police officer with the San Diego Police Department and she told him that she was an FBI agent. She states that they first met in person on November 30, 2024, and have continued dating thereafter. She states that she has "never met any of his family," does "not know where they live," and has not travelled to Mexico with him. *Id.* She states that, on December 22, 2024, he told her that two of his brothers were involved in an FBI case, with one of them incarcerated and the other deported. He told her that his incarcerated brother "sometimes called him from jail." *Id.* at 3. He told her that "he was

---

[2] The Special Agent's affidavit is filed under seal and contains the unredacted names of the Special Agent, her boyfriend, and other individuals. (*See* ECF No. 260-1.)

not asking [her] about the case, but he wanted to let [her] know, so that [she] could inform [her] management if [she] felt it necessary." *Id*. She states that she informed her management on December 23, 2024. She states that, on January 2, 2025, she "moved to a different section of the FBI" and "will remain on this detail until at least the end of March 2025." *Id*. She states that she and her boyfriend "have not discussed this matter further," and "[h]e has not asked me for (nor have I provided him with) any information about the case." *Id*.

On February 10, 2025, the Court addressed the Motion to Recuse at the motions in limine hearing. After hearing argument, the Court ordered supplemental briefing regarding Patron's request for an evidentiary hearing. (ECF No. 267.)

On February 15, 2025, Patron filed a Supplemental Brief in support of the Motion to Recuse. (ECF No. 271.) Counsel for Patron asserts that she was informed by counsel for the Government that "the FBI did not interview the special agent at issue," which is at odds with previously provided information suggesting that the Special Agent provided information to individuals at the FBI or the United States Attorney's Office on December 23, 2024 (the date the Special Agent reported her relationship to the FBI), January 27, 2025 (the date the U.S. Attorney's Office notified Patron of the conflict), and February 3, 2025 (the date the Special Agent executed her Declaration filed in this case). *Id*. at 2–3. Patron also argues that there are two other "factual contradictions" or "inconsistencies" in the record: "[t]he date the special agent met C001's brother" and "[t]he reason the special agent accessed Mr. Patron's case file in late summer 2024." *Id*. at 2. Finally, Patron references the "inexplicable" decision not to charge and to deport the brother of the Special Agent's romantic partner in January 2022. *Id*. at 3. Patron contends that an evidentiary hearing is necessary to resolve these disputes and/or inconsistencies.

On February 25, 2025, the Government filed a Response to Patron's Supplemental Brief. (ECF No. 284.) The Government contends that "[t]here are no

factual disputes and, to the extent there are any inconsistencies, none of them rise to the level of a material fact that would warrant a hearing." *Id*. at 1.

## II.    Discussion

The Court of Appeals for the Ninth Circuit has stated that "[w]e don't disqualify an entire office of federal prosecutors merely as a precautionary measure." *United States v. Williams*, 68 F.4th 564, 574 (9th Cir. 2023). Instead, "[b]ased on separation-of-powers principles and the consensus among courts, we believe disqualification of an entire U.S. Attorney's Office is an extreme remedy—only appropriate in the most extraordinary circumstances." *Id*. at 573. "First, a district court must find a strong factual predicate for blanket disqualification. Second, a district court must determine that the U.S. Attorney's Office's continued representation of the government will result in a legal or ethical violation." *Id*. "These requirements mean a court must not only make specific findings against the accused prosecutors, but it must also determine that any misconduct or conflict so pervades the office that less intrusive remedies would be inadequate to safeguard against a legal violation." *Id*. The evidentiary showing necessary to disqualify even a single prosecutor is substantial: "at a minimum, defendants must demonstrate prejudice from the prosecutor's potential conflict of interest," and "[m]oreover, … clear and convincing evidence of prosecutorial misconduct must be presented." *United States v. Kahre*, 737 F.3d 554, 574 (9th Cir. 2013).

The only evidence in the record is the Special Agent's affidavit, summarized above. Based upon the affidavit, the Special Agent had only minor involvement in this case and her involvement concluded four months prior to her first contact with the individual she is currently dating. Based upon the affidavit, the Special Agent had no role in the investigation of the case and has no knowledge of the facts of the case or the investigation and is no longer working with the Strike Force. Based upon the affidavit, the Special Agent has disclosed no facts related to the case to her boyfriend. The Government has represented that neither the Special Agent nor her boyfriend is

anticipated to be a witness at trial, and the Special Agent "has played—and will play—no role in the investigation or prosecution of this case." (ECF No. 260 at 2.)

The Motion to Recuse contains no affidavits or other evidence and Patron does not explain the exact nature of the alleged conflict. Patron does not recite any specific facts showing any conflict among any of the prosecutors assigned to the case or any of the agents who investigated the case or are expected to be witnesses in the case. Based upon the current record, the Court finds that there is no "strong factual predicate" for disqualification of any prosecutor or agent expected to be called at trial, much less "blanket disqualification" of the entire U.S. Attorney's Office for the Southern District of California or the FBI's San Diego Field Office. *Williams*, 68 F.4th at 573. Accordingly, to the extent that the Motion to Recuse requests recusal of the U.S. Attorney's Office for the Southern District of California and the FBI's San Diego Field Office, the request is denied.

In the Motion to Recuse, Patron requests that the Government "disclose the date that [the Special Agent and her boyfriend] met, how they met, how and when [the Special Agent] learned that her lover was the brother of [Patron's codefendant and a material witness], their written communications regarding the case, and all communications in which [the Special Agent] either received or disseminated case information to anyone within or outside of the FBI/USAO." (ECF No. 262 at 4.) The Court finds that the Government's Response, including the Special Agent's affidavit, adequately provides this requested information.

Patron also "requests the production, from [the Special Agent] and her boyfriend, of [the deported material witness'] location." *Id*. The Special Agent denies knowledge of the material witness' location. Patron provides no legal authority for the Court to order the Special Agent's boyfriend—who is not employed by the federal government or an agency with any involvement in this case—to provide information about his sibling's whereabouts. Absent such authority, this request is denied.

Finally, Patron "requests an evidentiary hearing in which he can make an inquiry of [the Special Agent], her boyfriend, and [the boyfriend's codefendant brother]." *Id.* An evidentiary hearing "need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Cook*, 808 F.3d 1195, 1201 (9th Cir. 2015) (citing, *inter alia*, *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000)); *see also United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) ("An evidentiary hearing … ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact … are in issue."); *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) ("If, in fact, a material issue of fact were raised which if resolved in accordance with (appellant's) contentions would entitle him to relief, an evidentiary hearing would be required. On the other hand, if the affidavits show as a matter of law that appellant was or was not entitled to relief, no hearing was required.") (quotations omitted).

Patron has raised three "factual contradictions" or "inconsistencies" in the record that he contends warrant an evidentiary hearing: (a) the Special Agent communicated information to the FBI on two or three occasions but the Government has reported that the FBI conducted no "interviews" of the Special Agent related to this matter and has no interview reports; (b) the Special Agent initially said she first met her boyfriend in December 2024 but later said she first met him online on November 26, 2024 and in person on November 30, 2024; and (c) the Special Agent stated she could not remember why she accessed a summary report in Patron's case file on July 15, 2024, initially incorrectly referring to the report as a subpoena return and later speculating that she accessed the report to assist her in formatting her own reports despite there being "no special formatting requirements" for such reports. (ECF No. 271 at 2, 3.) Defendant has failed to articulate how any of these purported factual contradictions or inconsistencies, whether viewed separately or in combination, raise "a material issue of fact … which if resolved in accordance with [Defendant's] contentions would entitle him to relief" on

the pending Motion to Recuse. *Irwin*, 612 F.2d at 1187. Each of these events occurred years after the Special Agent's boyfriend's brother was deported in January 2022 and his other brother pled guilty in this case in June 2022. None of the purported factual contradictions or inconsistencies are material to the standards required for the "extreme remedy" of disqualification requested in the Motion to Recuse. *Williams*, 68 F.4th at 573. The Motion to Recuse and the supplemental briefing fail to "allege facts with sufficient definiteness, clarity, and specificity to enable the … court to conclude that contested issues of fact exist." *Cook*, 808 F.3d at 1201. Accordingly, the request for an evidentiary hearing is denied.

## III.    Conclusion

IT IS HEREBY ORDERED that the Motion to Recuse is denied. (ECF Nos. 250 & 262.)

IT IS FURTHER ORDERED that, during the trial, leave of Court must be obtained outside the presence of the jury prior to the introduction of any evidence of— or cross-examination related to—the Special Agent's relationship with her boyfriend.

Dated:  February 27, 2025

Hon. William Q. Hayes
United States District Court