ANDREW R. HADEN
Acting United States Attorney
MARIO J. PEIA
ALEXANDRA F. FOSTER
California Bar No. 307503
Washington, D.C. Bar No. 470096
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel.: (619) 546-9706/6735
Email: Mario.Peia/Alexandra.Foster@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. BRIAN ALEXIS PATRON LOPEZ, Defendant. | Case No.: 21cr1683-WQH **United States' Response in Opposition to Defendant's Supplemental Filing re. Juror Contact (ECF No. 334)** Honorable William Q. Hayes |

Defendant has failed to meet his burden to show the text message was "possibly prejudicial" with "a tendency to be injurious to the defendant." *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017) (en banc) (quotations omitted). As an initial matter, Defendant has not provided a declaration from a fact witness. Even assuming the veracity of the factual assertions within his briefing, however, Defendant's brief exposes the text message for what it is: a spam message or wrong number wholly unrelated to the case. And Defendant's own briefing demonstrates the jurors treated it as such. This is the type of "innocuous" communication that would "not necessarily raise a presumption of prejudice." *Id.* at 967–68 (9th Cir. 2017). As such, Defendant's burden at step one is not met—nor can it be met—

and an evidentiary hearing is not warranted. The Court should make a finding that the contact was innocuous, take no further action, and proceed to sentencing on July 7, 2025.

# I.

# ARGUMENT

   a. *Defendant's factual assertions, although improperly supported, demonstrate the message was not "about the matter pending before the jury."*

Jury tampering is "an effort to influence the jury's verdict by threatening or offering inducements to one or more of the jurors." *United States v. Dutkel*, 192 F.3d 893, 895 (9th Cir. 1999). "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial *about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial[.]" *Remmer v. United States*, 347 U.S. 227, 229 (1954) (emphasis added).

On the other hand, the Ninth Circuit "recognize[s] the practical impossibility of shielding jurors from all contact with the outside world," and more importantly, "that not all such contacts risk influencing the verdict." *Godoy*, 861 F.3d at 967 (quoting *Tarango v. McDaniel*, 837 F.3d 936, 947 (9th Cir. 2016)). "Thus, the defendant's burden at step one cannot be met by '[t]hreadbare or speculative allegations' of misconduct." *Id.* (quoting *Tarango*, 837 F.3d at 947. "Nor do 'allegations involving prosaic kinds of jury misconduct,' such as 'chance contacts between witnesses and jury members—while passing in the hall or crowded together in an elevator,' trigger the presumption." *Id.* (quoting *Tarango*, 837 F.3d at 947, 951). Even lower on the scale are communications that, when viewed under "the surrounding circumstances" and with common sense, are "innocuous" in nature. *Id.* at 968.

As an initial matter, Defendant makes numerous factual assertions, yet fails to provide the required declaration in support. *See* Local Criminal Rule 47.1(g)(1) ("Criminal motions requiring a predicate factual finding must be supported by declaration(s).") A declaration from defense counsel is not sufficient, as defense counsel does not claim to be percipient fact witness; she merely passes on second- and third-hand allegations from sources who themselves have not attested to the facts alleged. *See* Local Criminal Rule

2

47.1(g)(2) ("Each declaration must show affirmatively that the declarant is competent to testify to the matter stated therein[.]"). Defendant could have provided a declaration from defense investigator Dennison and/or Juror 3, but has done neither.[1] That is telling because even the unsupported facts included in Defendant's briefing fail to demonstrate that the text message is anything more than "innocuous."

Defendant's own briefing admits that the text message merely "said [Vanessa] knew juror number one and asked her if she was going to attend an event." Def.'s Br., p. 3. Defendant further admits that, "[a]fter discussing the text with the other jurors, juror number one responded to the text by stating she did not know the woman and was going to block her." *Id*. Even assuming, *arguendo*, the veracity of Defendant's "threadbare" factual assertions, *Tarango*, 837 F.3d at 947, this was plainly a spam message or wrong number that the jurors treated as such. It is further apparent that the text message was not *about the matter pending before the jury*. *Remmer*, 347 U.S. at 229 (emphasis added). As such, it would be a stretch to consider this text an improper jury contact, much less jury tampering.

    b. *The message was not "sufficiently improper," nor did it give rise to a "credible risk of affecting the outcome of the case."*

To meet his burden of presenting "possibly prejudicial" facts with "a tendency to be injurious to" him, Defendant "must present evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case." *Godoy*, 861 F.3d at 967. The Ninth Circuit subsequently divided this analysis into two parts: Defendant must (1) show that the contact was "sufficiently improper" and (2) that it gives rise to a "credible risk of affecting the outcome of the case." *Clark v. Chappell*, 936 F.3d 944, 970–71 (9th Cir. 2019) (quotations and citations omitted). Defendant has shown neither.

---

[1] Defendant alleges in his motion, but not in defense counsel's declaration, that "two individuals who identified themselves as FBI agents" blocked defense investigator Dennison from speaking with Juror 1. Def.'s Br., p. 2. That did not occur and makes no sense. Even if an FBI agent knew where Juror 1 was employed (and the case agents did not), it would make no sense for an agent to camp out in front of Juror 1's office *after* the trial at precisely the same time Mr. Dennison was trying to contact this juror and then block his access.

3

First, Defendant has made no showing that the contact was "sufficiently improper." This analysis mirrors the analysis above. Even assuming as true the entirety of Defendant's unverified pleading, the text message did not relate to the case before the jury. The message was not an attempt to influence, threaten, or bribe. It was a far cry from the threatening call in *United States v. Angulo*, 4 F.3d 843, 846 (9th Cir. 1993) ("I know where you live"), and it is not remotely close to the efforts to intimidate and bribe found in *United States v. Dutkel*, 192 F.3d 893, 894 (9th Cir. 1999). And, with the facts included in Defendant's briefing, this is not a scenario in which "'[w]e do not know from th[e] record … what actually transpired, or whether the incidents that may have occurred were harmful or harmless.'" *Godoy*, 861 F.3d at 968 (quoting *Remmer*, 347 U.S. at 229). Rather, upon Defendant's own admissions, we know this was a spam message or wrong number in which the sender asked the juror if she was going to "attend an event," something entirely unrelated to the trial, the defendant, and the juror.

Second, Defendant has failed to demonstrate that there is a "credible risk of affecting the outcome of the case." "To determine 'whether the communication raised a risk of influencing the verdict,' the court may consider factors such as 'the length and nature of the contact, the identity and role at trial of the parties involved, evidence of actual impact on the juror, and the possibility of eliminating prejudice through a limiting instruction.'" *Clark*, 936 F.3d at 971 (quoting *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 697–98 (9th Cir. 2004)). In short, "the court considers the full context of the contact to determine whether a credible risk of prejudice exists." *Godoy*, 861 F.3d at 967.

Most of these factors were addressed in the United States' initial briefing, and remain unchanged—or weigh more heavily in favor of finding that contact was innocuous—after Defendant's briefing. The text message was quick and, upon Defendant's admission, was dealt with when the juror blocked the number. There is no indication subsequent contact was attempted. Defendant's own briefing confirms the message was a spam message or wrong number unrelated to any component of the trial.

Consideration of "the identity and role at trial of the parties involved" and "evidence of actual impact on the juror" further demonstrates this was the type of "innocuous" communication that would "not necessarily raise a presumption of prejudice." *Godoy*, 861 F.3d at 967–68. The facts included in Defendant's briefing demonstrate the jurors discussed and responded as if they believed this text was a spam or stray message. The juror simply responded that she didn't know the sender and blocked the number. Perhaps more importantly, there is no indication the message was, in fact, connected to the Defendant, or perceived by the jurors to be connected to the Defendant. As discussed in the United States' March 31, 2025 briefing, ECF No. 333, pg. 3–4, "Vanessa" and "Denver"—to the extent they are perceived or remembered as "Vaness" and "Pueblo, Colorado"—were connected to witnesses, not the Defendant. Moreover, the evidence in this case showed that another witness, not Vaness, was linked to Colorado. A group of jurors deliberating over the evidence would have quickly recognized the gaps revealing the wholly random nature of the text message. There was therefore no reason for the jurors to believe this message had any connection to the Defendant or the trial itself. Unlike in *Angulo*, relied on by Defendant, the jurors here were not left to believe "that defendant[ was] responsible for the threat, and based on that assumption, may have decided the merits of the case on that basis." 4 F.3d at 847.

Nor did this spam message distract the jurors in any meaningful way, as Defendant alleges. This is evidenced by how the juror handled the message itself (as anyone would have handled a spam or stray message and moved on): respond by stating she didn't know the person and blocking the number. Defendant's discussion of *Dutkel*, 192 F.3d at 898, is distinguishable. In *Dutkel*, the co-defendant "employed two henchmen…to bribe and/or intimidate [a juror]." *Id*. at 894. The henchmen had "repeated contacts with [the juror that] left him…a disturbed and troubled man, deeply concerned about his own and his family's safety." *Id*. at 898 (quotations and citations omitted). With this factual backdrop and the strength of the improper contact, the Ninth Circuit held the defendant made a *prima facie* case because the improper contacts "may well have prevented [the juror] from thinking

5

1  about the evidence or paying attention to the judge's instruction." *Id*. Similarly, in *United
2  States v. Henley*, another case Defendant cites, a juror was offered a $50,000 cash bribe.
3  238 F.3d 1111, 1113 (9th Cir. 2001). But the facts in *Dutkel* and *Henley* are categorically
4  different from the facts here. This case involves an innocuous spam or stray message, not a
5  direct and deliberate attempt to bribe or intimidate, prompting a juror's concern for their
6  safety. There is no indication the jurors were concerned for their safety, nor is there any
7  indication that concerns about a harmless spam message rose to a level that would "prevent
8  [the jurors] from thinking about the evidence or paying attention to the judge's
9  instructions."[2]

10 //
11 //
12 //
13 //
14 //
15 //
16 //
17 //

---

[2] Defendant suggests, without legal analysis, that Juror 1's conduct constituted misconduct. Juror misconduct is a different, albeit related, line of case law and analysis. Misconduct includes a juror's disregard of court orders, improper communications, revelation of lies during *voir dire*, and refusal to follow law. *See United States v. Vartanian*, 476 F.3d 1095, 1098 (9th Cir. 2007) (juror spoke with Defendant's family members during breaks then lied to court about it); *United States v. Christensen*, 828 F.3d 811 (9th Cir. 2015) (juror would not follow law and lied to court). "The court must determine if the bias or prejudice amounted to a deprivation of Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees. The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir. 1977) (quotations and citations omitted). Whether an actual evidentiary hearing is necessary is left to the discretion of the district court. *Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005) (collecting case law). For the same reasons included in this briefing that address jury tampering, Defendant does not—and cannot—demonstrate that he has been prejudiced. Therefore, to the extent Defendant's briefing is interpreted as a motion for a hearing based on juror misconduct, it should again be denied.

## II.
## CONCLUSION

The United States asks this Court to treat the message as an innocuous communication, unrelated to any party, that did not involve the matter pending before the jury. It does not constitute a "sufficiently improper" contact, and it does not present a "credible risk of affecting the outcome of the case." The United States respectfully requests that the Court make a finding consistent with this briefing and maintain the current dates for post-trial motions and sentencing.

Dated: April 7, 2025

ANDREW R. HADEN
Acting United States Attorney

*s/Mario J. Peia*
MARIO J. PEIA
ALEXANDRA F. FOSTER
Assistant United States Attorneys