# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIAN ALEXIS PATRON LOPEZ (4),<br><br>    Defendant. | Case No.: 3:21-CR-1683-WQH<br><br>**ORDER** |

The matter before the Court is the request for an evidentiary hearing, filed by Defendant Brian Alexis Patron Lopez ("Patron"). (ECF No. 334.)

## I.   Background

On March 19, 2025, after a seven-day trial and on the second day of deliberations, a jury returned a verdict finding Patron guilty of intentional killing while engaged in drug trafficking, hostage taking resulting in death, and conspiracy to commit hostage taking resulting in death. (ECF Nos. 324, 325.)

After the jury was polled and discharged, the Court set a June 9, 2025 date for the filing of post-trial motions (with responses due June 23, 2025) and a July 7, 2025 sentencing date. (ECF No. 324.) After Patron and all counsel left the courtroom for the day on March 19, 2025, the bailiff entered the jury room to retrieve the exhibits and encountered Juror Number 1.[1] Juror Number 1 reported to the bailiff that she received

---

[1] As discussed with the parties prior to trial and without objection, the Court employed anonymous-jury procedures to ensure that the jurors' identities would be known only to Court personnel and counsel for both sides.

1

a text message from a phone number that she did not recognize with a Denver area code from a person identifying themselves as "Vanessa." Juror Number 1 told the bailiff that she recalled that a witness in the trial was arrested in Colorado and had an associate with a name similar to Vanessa. After consultation with the Court, the bailiff returned to the jury room, informed Juror Number 1 that he could offer no advice and did not question her about the text message.

The following day, March 20, 2025, the Court conducted a hearing informing the parties of Juror Number 1's communication to the bailiff and ordering briefing on this juror issue. (ECF No. 331.)

On March 31, 2025, the parties filed their respective briefs on the juror issue. The Government states:

> The text message that Juror 1 received intersects with this case in two unrelated and negligible ways. First, the name "Vaness" was raised once, in passing. It appears in Government Exhibit 107, pg. 13. When defense counsel asked about "Vaness" on cross examination, A.L. answered that she was someone who imported controlled substances for him, presumably from Tijuana to San Diego. "Vaness" was not mentioned again at trial. Second, J.M. was arrested in a hotel in Pueblo, Colorado, a city over 100 miles from Denver with a different area code. Once again, the location of J.M.'s arrest was only mentioned in passing and played no role in either side's presentation of evidence or arguments in opening or closing. The "Vaness" from the text and A.L. had no connection to Denver, and nothing linked J.M. to "Vaness."

*Id*. at 3. The Government contends:

> Altogether, all available evidence, particularly the juror's anonymity, indicates the contact was not "sufficiently improper." And, even if it were, there is no "credible risk" of the message affecting the outcome of the case. This appears to be an unfortunate spam message that hints at two loose and unrelated connections to inconsequential parts of the case. As such, the Court should find that Defendant has not and cannot meet his burden at step one of the *Godoy* test.

*Id*. at 4.

2

Patron states:

> On the afternoon of March 20, 2025, Mr. Patron's investigator – retired DHS OIG Special Agent Brian Dennison – attempted to speak with juror number one at her place of employment. However, two individuals who identified themselves as FBI agents were already on site, and they advised the resident security guard that Investigator Dennison was not part of their envoy and should not be allowed in. Consequently, he was not allowed in. Juror number one did not return investigator Dennison's subsequent calls.
>
> On, March 22, 2025, Investigator Dennison spoke to another juror, juror number three.… [J]uror number three indicated that juror number one did, in fact, show the extraneous text message to all of the jurors, and that the group discussed the text message at length. Further, juror three stated that, when juror one showed the extraneous communique to the entire group, the group discussed whether the text was spam or a contact by someone connected to the trial. After the juror presented the jury with the extraneous communique, discourse ensued with regard to the origin and meaning of the message. Juror number three advised that the texter, "Vanessa," said she knew juror number one and asked her if she was going to attend an event. After discussing the text with the other jurors, juror number one responded to the text by stating she did not know the woman and was going to block her.
>
> The jury's discourse necessarily included consideration that the extraneous communique could have been an intimidation attempt by someone connected to the trial.

(ECF No. 334 at 2–3.) Patron includes a declaration from defense counsel. *Id*. at 10. Patron contends that, "[a]lthough the record, as it stands now, is sufficient to order a new trial, at a minimum the Court must hold an evidentiary hearing where the parties are allowed to question the entire jury on the scope of the taint/misconduct." *Id*. at 8.

On April 7, 2025, the Government filed a response to Patron's March 31 brief. The Government contends:

> Defendant has failed to meet his burden to show the text message was "possibly prejudicial" with "a tendency to be injurious to the defendant." *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017) (en banc) (quotations omitted). As an initial matter, Defendant has not provided a

> declaration from a fact witness. Even assuming the veracity of the factual assertions within his briefing, however, Defendant's brief exposes the text message for what it is: a spam message or wrong number wholly unrelated to the case. And Defendant's own briefing demonstrates the jurors treated it as such. This is the type of "innocuous" communication that would "not necessarily raise a presumption of prejudice." *Id*. at 967–68 (9th Cir. 2017). As such, Defendant's burden at step one is not met—nor can it be met— and an evidentiary hearing is not warranted. The Court should make a finding that the contact was innocuous, take no further action, and proceed to sentencing on July 7, 2025.

(ECF No. 335 at 1–2.)

On April 7, 2025, Patron filed a response to the Government's March 31 brief. Patron asserts:

> Here, a juror, on the verge of deliberating a DTO [Drug Trafficking Organization] kidnapping, torture, and murder case, pondered whether she was contacted by someone associated with the DTO. Rather than comply with the court's instruction, to promptly report extraneous contacts, she tainted the entire panel with the information. The Supreme Court has unequivocally and repeatedly held that a district court must, upon learning of such an allegation, conduct an evidentiary hearing to determine the extent of prejudice.

(ECF No. 336 at 8.)

The Court conducted a status hearing on April 14, 2025. (ECF No. 338.)

## II.  Discussion

"A defendant has a Sixth Amendment right to 'a verdict by impartial, indifferent jurors' to avoid any bias or prejudice that might affect the defendant's right to a fair trial." *United States v. Simtob*, 485 F.3d 1058, 1064 (9th Cir. 2007) (quoting *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc)). "Improper influence or bias of a single juror would affect that right." *Id*.

### A. Two-Step Process

A court applies a two-step process "[w]hen a defendant alleges improper contact between a juror and an outside party[.] [T]he court asks at step one whether the contact

4

was 'possibly prejudicial.'" *Godoy v. Spearman*, 861 F.3d 956, 962 (9th Cir. 2017) (en banc) (quoting *Mattox v. United States*, 146 U.S. 140, 150 (1892)). "If so, the contact is 'deemed presumptively prejudicial" and the court moves to step two, where the 'burden rests heavily upon the [government] to establish' the contact was actually 'harmless.'" *Id.* (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)). "If the [government] does not prove harmlessness, the court sets aside the verdict." *Id.*

"As an initial matter, even before triggering the presumption [of prejudice], a determination must be made into the type of contact at issue." *Clark v. Chappell*, 936 F.3d 944, 970 (2019) (quotation omitted). The Ninth Circuit "recognize[s] the practical impossibility of shielding jurors from all contact with the outside world, and also that not all such contacts risk influencing the verdict." *Godoy*, 861 F.3d at 967. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "Thus, folded into defendant's burden at step one, before triggering the presumption, is a showing that the juror's contact with the non-juror was 'sufficiently improper.'" *Clark*, 936 F.3d at 970 (quoting *Godoy*, 861 F.3d at 967). "[T]he defendant's burden at step one cannot be met by threadbare or speculative allegations of misconduct." *Godoy*, 861 F.3d at 967 (quotation omitted).

"Once the contact has been determined to be sufficiently improper, the court moves on to the second half of the first step: determining whether the sufficiently improper contact gives rise to a 'credible risk of affecting the outcome of the case.'" *Clark*, 936 F.3d at 970 (quoting *Godoy*, 861 F.3d at 967). "[T]he defendant's burden at step one to show a possibility of prejudice is not onerous." *Godoy*, 861 F.3d at 968. "Because 'highly troubling contacts do not necessarily raise a presumption of prejudice,' courts 'consider[ ] the full context of the contact to determine whether a credible risk of prejudice exists.'" *Clark*, 936 F.3d at 970 (quoting *Godoy*, 861 F.3d at 967). "Among the considerations relevant to this determination are the identity of the outside party and the nature of the contact." *Godoy*, 861 F.3d at 967. "Similarly—

5

regardless of the outside party's identity—communications about the matter pending before the jury, if not made in pursuance of the rules and the instructions of the court, greatly increase the risk of prejudice." *Id*. (quotation omitted). "At step one, the court considers the full context of the contact to determine whether a credible risk of prejudice exists…. [E]ven contact about the case may be insufficient to trigger the presumption if the surrounding circumstances show the contact was innocuous." *Id*. at 168.

"Once a defendant shows a possibly prejudicial contact, the presumption of prejudice attaches, and the burden shifts to the [government] to prove the contact was harmless. Harmlessness in this context means that there is no reasonable possibility that the communication influenced the verdict." *Id*. (quotation omitted). "[T]he [government] must rebut the presumption by pointing to some evidence contrary to the evidence that established it." *Id*.

### B. Whether an Evidentiary Hearing Is Warranted

In certain circumstances, the Ninth Circuit has held that it is appropriate for a trial court to conduct an evidentiary hearing prior to deciding whether the defendant has met his burden at step one to be entitled to a presumption of prejudice.

In *United States v. Angulo*, 4 F.3d 843 (9th Cir. 1993), the Ninth Circuit held that an evidentiary hearing was required when a juror received an anonymous phone call during trial in which the caller said, "I know where you live." *Id*. at 846. The juror told her fellow jurors about the call and later informed the judge. The judge excused the juror who received the call but made no inquiry of the effect of the call on the other jurors. The Ninth Circuit held that the district court abused its discretion in failing "to hold an evidentiary hearing to determine whether the jurors who knew of the threat were able to act impartially and without bias." *Id*. at 848. The Ninth Circuit stated that "the Supreme Court has stressed that the remedy for allegations of jury bias is a hearing, in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial." *Id*. at 846 (citing *Remmer*, 347 U.S. at 229-30 (1954)). The Ninth Circuit stated that "in determining whether a hearing must

6

be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id*. at 847. The court stated that, "without a hearing, a district court does not have the essential facts to properly evaluate a defendant's motion for mistrial." *Id.*

In *United States v. Jackson*, 209 F.3d 1103 (9th Cir. 2000), "[d]uring jury deliberations at Jackson's trial, a juror reported receiving a threatening phone call from an unidentified person." *Id*. at 1107. "The district court conducted a voir dire inquiry, at which the juror related that he believed that the call probably was unconnected with the trial," and the trial judge "then instructed the juror not to relate the incident to other jurors, and permitted the juror to continue deliberating with the rest of the jury." *Id*. 1107–08. "Three years later, … Jackson's investigator interviewed the juror. According to the investigator, the juror stated that 'at the time he received the phone call,' he thought the call was related either to his involvement in local politics or 'it was a desperate attempt to hang the jury. Carpenter [Jackson's co-defendant] seemed the most likely source.'" *Id*. "The juror later refused to sign the statement given to the investigator although, according to the investigator, the juror represented that the contents of his statement were true." *Id*. On a motion pursuant to 28 U.S.C. § 2255, the Ninth Circuit "remand[ed] the matter to the district court for further appropriate proceedings, including 'a hearing, in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial.'" *Id*. at 1110 (quoting *Angulo*, 4 F.3d at 847 (emphasis omitted) (citing *Remmer*, 347 U.S. at 229–30); *Smith v. Phillips*, 455 U.S. 209, 216 (1982)). The Ninth Circuit then made clear that, after the evidentiary hearing, the trial court was then to conduct *Remmer*'s two-step process: "If the district court determines that the juror (or other jurors) believed at the time of the trial that the phone call might have been an attempt by one of the defendants to hang the jury [i.e., step one of the two-step process], the district court shall require the government to show that the threatening phone call was harmless beyond a reasonable doubt [i.e., step two of the two-step process]." *Id*.

7

Similarly, in *United States v. Rutherford*, 371 F.3d 634 (9th Cir. 2004), the Ninth Circuit considered on direct appeal an "assert[ion] that the jury was prejudiced because a large number of IRS and government agents sat directly behind the prosecution table throughout the trial and glared at the jurors, intimidating them, and causing some of the jurors to fear that if they acquitted the Rutherfords, the IRS might retaliate against them." *Id*. at 635. The Ninth Circuit "h[e]ld that the district court erred in concluding that the defendant must prove that the individuals involved intended to influence or prejudice the jurors in order for the presumption of prejudice to apply. The appropriate inquiry is whether the unauthorized conduct raises a risk of influencing the verdict, or had an adverse effect on the deliberations." *Id*. at 644 (quotations omitted). The Ninth Circuit stated that "it would not be appropriate for us, on this incomplete record, to determine whether the presumption should apply and whether the jurors were adversely influenced by the agents' conduct at the trial. Rather, we leave that task to the district judge following the holding of a further evidentiary hearing." *Id*. The Ninth Circuit remanded and held that "the district court should allow the parties to introduce evidence regarding the jurors' perceptions of the agents' conduct and any discussions among the jurors concerning the possibility of retaliation if they voted to acquit." *Id*. at 645. The Ninth Circuit stated that, "[a]fter reviewing the evidence, if the court determines that the agents' conduct raised a risk of influencing the verdict, then the presumption of prejudice should be applied." *Id*. As in *Jackson*, the *Rutherford* court envisioned the evidentiary hearing would occur *prior to* determining whether the defendants met their burden at step one to establish a presumption of prejudice.

At the April 14, 2025 hearing, the Government argued that the Ninth Circuit overruled this caselaw in *Godoy*. However, nothing in *Godoy* states that the above cases were overruled; indeed, *Rutherford* was cited with approval in *Godoy*. *See Godoy*, 861 F.3d at 969. Moreover, unlike *Rutherford* and *Jackson*, *Godoy* was a habeas proceeding pursuant to 28 U.S.C. § 2254 related to a state court case, and thus was governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Godoy*, 861 F.3d at

962. AEDPA contains strict rules governing the availability of evidentiary hearings. *See, e.g*, 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420 (2000). Even assuming *Godoy*'s discussion of the availability of evidentiary hearings in the context of a § 2254 habeas proceeding is relevant to federal criminal cases, *Godoy* only held that "*Remmer* … clearly requires a hearing where, as here, the presumption of prejudice attaches yet the prejudicial effect of the communications is unclear from the existing record…. Thus, the [California] court of appeal's decision that the trial court properly 'refused to conduct an evidentiary hearing' was contrary to *Remmer*." *Godoy*, 861 F.3d at 966; *see also id*. at 969 ("[O]nce the presumption attaches, the trial court must hold a hearing on prejudice if there is any remaining uncertainty about 'what actually transpired, or whether the incidents that may have occurred were harmful or harmless.'") (quoting *Remmer*, 347 U.S. at 229). *Godoy* does not go further and say (or even imply), as the Government contends here, that an evidentiary hearing is *not permitted* unless and until the defendant submits sufficient evidence to meet his burden at step one to create the presumption of prejudice. Given *Godoy*'s silence on this subject, this Court remains bound by the Ninth Circuit's holdings in *Rutherford* and *Jackson*.

Moreover, even if *Godoy* stood for the proposition that, even in cases not governed by AEDPA, no evidentiary hearing may be held until a defendant meets his burden with evidence establishing a presumption of prejudice, *Godoy* would be distinguishable based upon the allegations in this case. Patron's counsel has stated that her investigator was deterred from speaking with Juror Number 1 when "two individuals who identified themselves as FBI agents … advised the resident security guard that [defense] Investigator Dennison was not part of their envoy and should not be allowed in." (ECF No. 334 at 2.) While Government counsel asserts "[t]hat [this] did not occur and makes no sense" (ECF No. 335 at 3 n.1), the allegation that Government

agents actively prevented Patron from assembling evidence to meet his burden at step one distinguishes this case from *Godoy*.[2]

For the purposes of deciding whether to conduct an evidentiary hearing, the Court accepts defense counsel's representations of her investigator's interview with Juror Number 3.[3] The Court also relies upon the representations of the Court's bailiff, which are recounted above and on the record at the March 20, 2025 hearing. Based upon these representations and the caselaw discussed above, the Court finds that an evidentiary hearing is warranted to develop the record prior to considering the two-step process outlined above.

The Court finds that, to the extent practicable, all 12 jurors who deliberated should testify at the hearing. In order to facilitate the attendance of all jurors, the hearing will be conducted over two days, May 16, 2025 at 9:00AM and May 19, 2025 at 9:00AM. Jurors have the option of appearing on either date. The Government shall subpoena or otherwise secure the attendance of the 12 jurors.

**C. Scope of the Evidentiary Hearing**

"The appropriate inquiry [at the hearing] is whether the unauthorized conduct raises a risk of influencing the verdict, or had an adverse effect on the deliberations." *Rutherford*, 371 F.3d at 644 (quotations omitted). At the hearing, the Court seeks to "determine[] the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial.'" *Jackson*, 209 F.3d at 1110 (quoting *Angulo*, 4 F.3d at 847 (emphasis omitted)). "[O]bjective and subjective factors may both be considered." *Rutherford*, 371 F.3d at 645. The Court must "conduct … inquiry of the juror from which it could draw … inferences of the juror's impartiality" and examine whether the text message "impaired the juror's ability to act impartially." *Simtob*, 485 F.3d at 1065. The Court also must "consider the possibility that the juror may have communicated his

---

[2] The Court expresses no opinion on the credibility of this allegation.
[3] The Court cautions that for the purposes of deciding any motion for new trial, the Court will require evidence to be in an admissible form unless defense counsel can point to legal authority requiring such evidence to be considered.

or her perception of a threat to other jurors," *id.*, and consider "what effect the [text message] … had on them." *Angulo*, 4 F.3d at 847.

During the hearing, "a court may not, under [Federal] Rule [of Evidence] 606(b), consider testimony regarding the affected juror's mental processes in reaching the verdict." *Rutherford*, 371 F.3d at 644 (quotation omitted). "[F]or example, a juror cannot testify to whether an outside influence caused him to change his vote from innocent to guilty. However, a court can and should consider the effect of extraneous information or improper contacts on a juror's state of mind, a juror's general fear and anxiety following such an incident, and any other thoughts a juror might have about the contacts or conduct at issue." *Id.* (quotation omitted). For example, "a juror's testimony concerning his fear that individuals would retaliate against him if he voted to acquit (or convict) would be admissible, although his statement that he actually cast his vote one way or the other because of that fear would not." *Id.* "[E]vidence regarding any influence that such improper conduct or contacts had on the jurors' abilities to fairly and impartially receive the evidence, listen to the testimony presented, and the judge's instructions is also admissible." *Id.*

Due to the limitations on the scope of the inquiry of jurors imposed by Rule 606(b), the Court will conduct the questioning of the jurors. No later than May 9, 2025, the parties shall file a list of proposed questions, accompanied by any legal authority supporting the questions. No later than May 14, 2025, the parties may file any objections to the opposing party's proposed questions.

**III. Conclusion**

IT IS HEREBY ORDERED that Patron's request for an evidentiary hearing is granted. (ECF No. 334.)

To the extent practicable, all 12 jurors who deliberated shall testify at the hearing. The hearing will be conducted over two days, May 16, 2025 at 9:00AM and May 19, 2025 at 9:00AM. The Government shall subpoena or otherwise secure the attendance of the 12 jurors.

No later than May 9, 2025, the parties shall file a list of proposed questions for the Court to ask the jurors, accompanied by any legal authority supporting the questions. No later than May 14, 2025, the parties may file any objections to the opposing party's proposed questions.

After conducting the hearing, the Court will then set a briefing schedule and consider any motion related to this jury issue that Patron chooses to make.

Dated: April 21, 2025

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court