Exhibit 1

1

1          UNITED STATES DISTRICT COURT

2      FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   . . . . . . . . . . . . . ..
                               :
5   UNITED STATES OF AMERICA,   :   Case number:
                                 :   3:21-CR-1683-WQH
6              Plaintiff,        :
    vs.                          :
7                                :   Friday, May 16, 2025
                                 :   9:01 a.m. to 10:09 a.m.
8   BRIAN ALEXIS PATRON LOPEZ,   :
                                 :   San Diego, California
9              Defendant.        :
    . . . . . . . . . . . . . ..:

10

11

12                EVIDENTIARY HEARING
        BEFORE THE HONORABLE WILLIAM Q. HAYES
             UNITED STATES DISTRICT JUDGE

13

14

15  APPEARANCES:

16  FOR THE PLAINTIFF:
     Mario Peia, AUSA
17   Alexandra Foster, AUSA

18  FOR THE DEFENDANT:
     Meghan Blanco, Esq.

19

20  INTERPRETERS:
    Paula Navarro
21  Ariela Edelson Torenberg

22

    COURT REPORTER:
23   K. Stanford
     courtreporterstanford@gmail.com
24  _____
    Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-aided transcription.

2

1           P R O C E E D I N G S

2           THE COURTROOM DEPUTY:  Calling matter number one,

3    21-CR-01683-WQH, United States of America versus Brian Alexis

4    Patron Lopez, for an evidentiary hearing.

5           MS. BLANCO:  Good morning, Your Honor.  Meghan

6    Blanco on behalf of Mr. Patron Lopez, who is being assisted by

7    the Spanish language interpreter.  He is in custody.  And at

8    counsel table is private investigator Brian Dennison.

9           THE COURT:  Good morning.

10           MR. PEIA:  Good morning, Your Honor.  Mario Peia and

11    Alexandra Foster representing the United States.

12           THE COURT:  Good morning.

13           Counsel, I reviewed your questions, and I've

14    considered them.

15           I'm going to ask some, but not others.  Okay.

16           And the procedure that I intend to follow is we'll

17    have the jurors come in, obviously, one at a time.

18           I'll have -- we'll start with juror number 1.

19           And I propose we'll have juror number 1 come in and

20    just sit in the jury box as opposed to the witness box.

21           I think they may be more comfortable if they're in

22    the jury box, maybe a bit more relaxed.

23           So they'll come in, we'll give them a microphone,

24    and I'll ask the questions that I think are appropriate.

25           Before I excuse the juror, I'll give you an

3

1    opportunity, if you wish to, to come to sidebar, and then you

2    can, you know, interpose a request and say, Well, I wanted you

3    to ask this, to ask that, and we'll address it that way.

4         Then with respect to the jury should be compensated

5    for coming here, I think, technically, their service has

6    ended.  It ended, I think, at the end of the case.  So I think

7    it's more likely that they're more like just witnesses in a

8    criminal proceeding.

9         So can Government counsel, perhaps, contact your

10   witness coordinator, see if -- how they would go about

11   getting, you know, the minimal reimbursement they get?

12        MR. PEIA:  Yes, Your Honor, of course.

13        We, upon getting here today, sent an e-mail over to

14   our victim witness coordinator.  We got an e-mail back right

15   before the Court walked in.

16        And my understanding is that we're going to ask each

17   juror to go over to the sixth floor of the U.S. Attorney's

18   Office.  If they have a copy of their subpoena, it would be

19   helpful.  Otherwise, we'll get copies of the subpoena over to

20   our folks.  And they'll be able to ask for a particular

21   individual, and we'll make sure that they're compensated

22   accordingly.

23        THE COURT:  Perfect.  And then, do I -- so when they

24   leave the courtroom, who do they -- is there somebody that

25   they talk to or someone says, Go here, or, Go there?

4

1          MR. PEIA:  Just a moment, Your Honor.

2          (Brief pause.)

3          They should go over to the sixth floor, U.S.

4    Attorney's Office reception and ask for Tyler Rhea.  That's

5    spelled R-h-e-a.  And he should be able to help them.

6          THE COURT:  All right.  And that's in the federal

7    building?

8          MR. PEIA:  Yes.

9          THE COURT:  All right.  Thank you.

10         If you have somebody that can help them, that --

11   we'll take it one at a time.

12         MS. BLANCO:  And I have no objection.  I think they

13   may get a little lost.

14         THE COURT:  Sure.  We'll see what you have and --

15   all right.  Are we ready now?

16         MR. PEIA:  I believe so, Your Honor.  Yes.

17         THE COURT:  All right.  Let's get juror number 1.

18         (Juror enters courtroom.)

19         THE COURT:  Good morning.

20         Juror number 1 has entered the courtroom.

21         If you'd like to just sit in the jury box, and we'll

22   give you a microphone.  And you can just sit in the front row

23   there.  That's perfect.

24         We just have a couple -- I have a few questions for

25   you.  The lawyers won't be asking you questions, but I will.

5

1          But because we're going to ask you some questions,
2     we're going to put you under oath.
3          THE COURTROOM DEPUTY:  Please raise your right hand.
4          You do solemnly swear that the evidence you shall
5     give in the cause now before the court shall be the truth, the
6     whole truth, and nothing but the truth, so help you God?
7          THE JUROR:  Yes.
8          THE COURTROOM DEPUTY:  Thank you.
9          THE COURT:  Thank you.
10          We appreciate you coming down here today, but I have
11     a few questions.
12          And so, did you receive a text message on your phone
13     that you mentioned to the bailiff at the end of the -- at the
14     conclusion of the case?
15          THE JUROR:  Yes, I did.
16          THE COURT:  And do you happen to have a copy of that
17     with you?
18          THE JUROR:  I do not.  I think I blocked them and
19     deleted it.
20          THE COURT:  All right.  So you blocked --
21          THE JUROR:  There were less than 10 messages.
22          THE COURT:  And so can you tell us -- give us your
23     best recollection of what it said?
24          THE JUROR:  Yeah.  So, um --
25          THE COURT:  And just pull the microphone a little

6

1    closer.

2              THE JUROR:  Oh.  Sorry.

3              (Adjusts microphone.)

4              THE COURT:  Perfect.

5              THE JUROR:  Basically, it was just first a casual,

6    like, Oh, hi.  How are you?

7              And so I initially thought, like, maybe this is just

8    a number I didn't know but was someone that I had known

9    previously.  So I think I just replied saying, Sorry, you have

10   the wrong number.

11             And then they continued on to just say -- I think

12   they gave a full name, Vanessa Zhang, and that we had met at a

13   charity gala, which is when I knew that it was a scam, because

14   I was like, I don't go to charity galas.

15             So then I kind of just said a more firm, like,

16   Sorry, this is the wrong number.  Please don't contact me.

17             And then I blocked it and deleted the messages.

18             THE COURT:  And so did you get a last name?  Was it

19   Zhang?  Was that the last name?

20             THE JUROR:  Yes, I believe so.

21             THE COURT:  Z-a-n-g?

22             THE JUROR:  Z-h-a-n-g, yeah.

23             THE COURT:  And so you just -- you did respond to

24   it, and you just gave some inquiry like -- or your response to

25   it was, You have the wrong number, or things to that effect?

7

1          THE JUROR:  Yeah, things to that effect.  Wrong

2    number.  Like, Please don't contact me.

3          Because I initially thought it might have been

4    someone I knew, so I didn't want to be rude.  But once I

5    figured out it was, like, a scam, then I was kind of like,

6    Hey, please, like, leave me alone.

7          THE COURT:  And do you remember when you received

8    it, like, during the case about -- was it before the lawyers

9    made their closing arguments or was it after?  Do you know?

10          THE JUROR:  I think it was the day -- sorry.  I

11    think it was the day that they gave their closing, I believe.

12          THE COURT:  And so did you receive it when you were

13    home?

14          THE JUROR:  Yeah.  As soon as I got home, I think --

15    or not as soon as, but sometime when I was home after the day.

16          THE COURT:  And so it was -- was it after the

17    lawyers made their closings, or you don't remember exactly?

18          THE JUROR:  It was -- it was the day that the

19    lawyers gave their closings, so that day.

20          THE COURT:  And so then -- then, after you received

21    it, did you share it with anybody on the jury?

22          Did you discuss it with anybody, any of your fellow

23    jurors?

24          THE JUROR:  I did just get, like, a second opinion

25    from two of them only because when we were deliberating back

8

1  there, I was looking through my notes and I saw the name --

2  Vanness, I think, was the name that was associated with one of

3  the witnesses.  And so putting that together, I was, like, Oh,

4  is this something to be concerned about?  So I did ask the

5  opinion of two other jurors just to see -- just to get a

6  second opinion outside of my own brain.

7             THE COURT:  Sure.

8             THE JUROR:  Yeah.

9             THE COURT:  And so did you just take your phone and

10  show it to them and say, This is what I got?

11             THE JUROR:  Yeah.  I recovered the messages back

12  from the deleted file folder and then showed it to them.

13             THE COURT:  Okay.

14             And do you recall what they said to you?

15             THE JUROR:  I think they also kind of were just

16  like, This is a weird coincidence, but nothing to be concerned

17  about.

18             THE COURT:  All right.  I think you have probably

19  already answered this, but I'm going to ask you anyway.

20             Did you think that the text message was connected to

21  the case?

22             THE JUROR:  In, like, the tiniest bit of my mind

23  that just goes to very negative places because the number,

24  when I -- I had also Googled the phone number to see if it

25  would link to someone's social media that I knew.

9

1          My Google result that came up said Colorado, I

2   think.  And so looking back at my notes, once I saw the name

3   and I saw, like, Oh, it's associated with the witness that was

4   being held or incarcerated in Colorado, that's when I kind of

5   started putting things together, like, Is this something

6   concerning?  So those two factors made me think maybe this is

7   associated, but odds are it's not.

8          THE COURT:  And so when you Googled it, was that the

9   night that you got the text after the close but before the

10  deliberations?

11         THE JUROR:  Yes.

12         THE COURT:  And so you looked at it, and then you

13  wondered, Well, is it connected or not?

14         THE JUROR:  Yeah.

15         THE COURT:  And then was it the next day, then, when

16  you shared it with the jurors?

17         THE JUROR:  Yeah.  The next day, yeah, after we had

18  deliberated.  And then I had kind of realized, like, these

19  things were similar, I guess.  I don't know if that's the best

20  word.

21         THE COURT:  Right.

22         THE JUROR:  Yeah.

23         THE COURT:  And then during that time, did you reach

24  a conclusion whether it was or was not connected to the case?

25         THE JUROR:  Yeah.  I personally had concluded, like,

1    this is not something that's important.  It's most likely spam

2    and nothing that's actually connected with what's being

3    discussed here.

4            THE COURT:  And so as a result of that text message,

5    did you fear any retaliation against you from any individual

6    if you voted to acquit the defendant?

7            THE JUROR:  No, none at all.

8            THE COURT:  Did you fear any retaliation against you

9    or -- from any individual if you voted to convict?

10           THE JUROR:  No, not at all.

11           THE COURT:  Did you feel any intimidation or fear or

12   concern from the message?

13           THE JUROR:  I mean, to be quite honest, no.  But

14   just to be someone that's protective of my own safety, I

15   didn't want to take a chance.  So, ultimately, no, but I was

16   wary.

17           THE COURT:  And so when you -- you said you were

18   wary.  And so the way you dealt with being wary, was that

19   showing it to your fellow jurors or to the bailiff or -- like,

20   what did you do to make sure -- to address that concern?

21           THE JUROR:  Yeah.  So I think Mr. Bastille is the

22   bailiff, right?

23           THE COURT:  Right.

24           THE JUROR:  So I did show it to him just to see

25   if -- because he works in the system, like, get his opinion

1    and see if this is actually something to be concerned about

2    just for my own peace of mind.  Because I knew that if I

3    didn't ask and then left here, it would just keep, like -- I

4    don't know if that makes sense.

5            THE COURT:  Sure.

6            THE JUROR:  Like, it would keep being in my mind,

7    and I just wanted to put it to bed.

8            THE COURT:  And so during that -- the night after

9    you got it, you wanted to -- you Googled it to see if it --

10   like, where it came from, correct?

11           THE JUROR:  Yeah.

12           THE COURT:  And then you showed it to two jurors.

13   And is it your best recollection that the two jurors -- what's

14   your best recollection of what the two jurors told you?

15           THE JUROR:  Best recollection is just, It's not

16   important.  It's not something to be worried about.

17           THE COURT:  And when you told the two jurors, were

18   you all together, or did you do that privately with just two?

19           THE JUROR:  I think it was just -- it was private

20   during one of the breaks, I guess, as private as that can be.

21           THE COURT:  Okay.  And then -- so you wanted to

22   bring it to Mr. -- the bailiff's attention.

23           Did it -- did the text message in any way impact

24   your ability to be fair and impartial?

25           THE JUROR:  No, not at all.

                                                              **12**

1          THE COURT:  Did it negatively impact your ability to

2    listen to and follow the instructions that the Court gave you?

3          THE JUROR:  No, not at all.

4          THE COURT:  All right.

5          Any questions at sidebar?

6          MS. BLANCO:  Very briefly.

7          THE COURT:  Do you want to come to sidebar,

8    Ms. Blanco?

9          MS. BLANCO:  Yes, please.

10          (At sidebar.)

11          MS. BLANCO:  Thank you, Your Honor.

12          Just two follow-up questions.  One about whether she

13    thought about the text during deliberations and whether she

14    discussed the text -- at the time.  It's just a little

15    confusing to me whether she discussed the text with anyone

16    after they started deliberating.

17          THE COURT:  Well, do you mean, like whether she

18    talked to people other than the two jurors?

19          MS. BLANCO:  I was confused as to the timing of when

20    she talked to them.

21          THE COURT:  Yeah.  My under- -- well, my

22    understanding is that she got the text message, I think, the

23    day -- like, the night they closed, and then that was before

24    they began deliberations, and then she brought it to the

25    attention of two jurors in a break during deliberations.

1           MS. BLANCO:  Okay.  Got it.  Okay.

2           THE COURT:  And so your question is?

3           MS. BLANCO:  I just want to know if they discussed

4   it at all during deliberations and did she think about it

5   during deliberations.

6           THE COURT:  Okay.  Anything else?

7           I'll clarify.  It may be a little bit of leading to

8   see.  My understanding is that -- because I don't want to get

9   too much into what they did during deliberations.  But my

10  understanding is what they said, there was a break, and she

11  asked who -- and I can ask her, you know, did you talk about

12  this with anybody else other than the two that you did during

13  a break and then --

14          And I've asked her about did it impact her ability,

15  you know, to be fair and impartial.

16          I'm trying to not --

17          MS. BLANCO:  I know it's a tough line.

18          THE COURT:  I'm wary of -- I mean, I understand

19  there's a case that talks about distraction.

20          MS. BLANCO:  Right.

21          THE COURT:  I mean, the reality of it is, is that

22  almost anything can distract, you know, like where are we

23  going to lunch today --

24          MS. BLANCO:  Right.

25          THE COURT:  -- can distract them.

14

1         So I've already gone through those questions about,

2    you know, was she fearful, did it affect her ability to

3    follow, you know, all of those, so I'm hesitant to get too

4    much, but I'll clarify the issue with respect to the -- how

5    much they talked about it.

6              MS. BLANCO:  Okay.  Thank you, Your Honor.

7              MR. PEIA:  The only thing I would add, Your Honor,

8    is identifying which two jurors she spoke with to the extent

9    she can.

10             MS. BLANCO:  That's a very good point.

11             THE COURT:  Thank you.

12             (End sidebar.)

13        Just a few more questions.

14        You mentioned that you spoke about the text message

15   with two jurors.  And that was -- was it during a break that

16   the jurors took while they were deliberating?

17             THE JUROR:  Yeah.

18             THE COURT:  And so do you remember who the two were

19   that you spoke with?

20             THE JUROR:  Actually, yes, because we just got

21   reacquainted outside.  It was the -- I don't know his last

22   name but XXXXX, as well as XXXXX.  I don't know their juror

23   numbers.

24             THE COURT:  Okay.  And --

25             THE JUROR:  But I don't know if they recall, though,

15

1  is one thing.  So --

2          THE COURT:  Sure.  And do you know about, like, how

3  long -- do you have a guess as to about how long that

4  conversation took?

5          You just showed it to them and said, you know, What

6  do you think?  I got this.

7          THE JUROR:  Yeah.  Probably, like, less than ten

8  minutes, not a significant, like, conversation.

9          THE COURT:  Okay.  And --

10          All right.  Anything else?

11          MS. BLANCO:  No, Your Honor.  Thank you.

12          MR. PEIA:  No, Your Honor.

13          THE COURT:  All right.  You can be excused.

14          THE JUROR:  Thank you.

15          THE COURT:  And so thank you very much.

16          There is a procedure for you to be reimbursed for

17  your parking and fees.

18          THE JUROR:  Okay.

19          THE COURT:  And so I think if -- there might be

20  somebody that can help take you over to the U.S. Attorney's

21  Office, but the place you need to go is the sixth floor in the

22  federal building --

23          THE JUROR:  Oh.

24          THE COURT:  -- which is adjacent to this building.

25          THE JUROR:  Okay.

16

```
 1            THE COURT:  All right?  And I think the people out
 2    there will be able to give you some help getting there.
 3            THE JUROR:  Okay.
 4            THE COURT:  Thank you very much.
 5            (Juror exits.)
 6            THE LAW CLERK:  Do you want me to get the next one?
 7            THE COURT:  Yeah.  So the next one -- why don't we
 8    take the next one.  I think we have Juror 3.
 9            THE LAW CLERK:  I'll see if Juror 3 is there.
10            (Pause in proceedings.)
11            (Juror enters courtroom.)
12            THE COURT:  So we have juror number 2.
13            Thank you for coming down.
14            And if you just sit right in the jury box, I just
15    have a couple questions for you.
16            Only I'll be asking you some questions.
17            Thank you for coming down.
18            Because we may ask you some questions, we have to
19    put you under oath.
20            THE JUROR:  Okay.
21            THE COURTROOM DEPUTY:  Please raise your right hand.
22            You do solemnly swear that the evidence you shall
23    give in the cause now before the court shall be the truth, the
24    whole truth, and nothing but the truth, so help you God?
25            THE JUROR:  I do.
```

17

1          THE COURTROOM DEPUTY:  Thank you.

2          THE COURT:  Thank you.  Thank you for coming down.

3          I have a few questions for you.

4          During your service as a juror in this courtroom,

5    did juror number 1 ever mention to you a text message that she

6    had received?

7          THE JUROR:  Yes.  The day -- I think it was the day

8    of the verdict.

9          THE COURT:  And was it before or after the verdict?

10   Do you remember?

11         THE JUROR:  After.

12         THE COURT:  So it was after?

13         THE JUROR:  Yes.

14         THE COURT:  And did juror number 1 mention anything

15   to you about it before the verdict?

16         THE JUROR:  No.

17         THE COURT:  And do you remember what she mentioned?

18   Did she just show you something or say she got something?

19         THE JUROR:  Well, it wasn't just me personally.

20   I think there was several of us outside the courthouse, and

21   she said she had gotten some strange text from -- but I don't

22   recall the details.  To me, it just sounded -- I didn't think

23   anything of it.  It just sounded like a phishing text or spam

24   or something.

25         THE COURT:  Right.  And so you didn't hear about --

18

1  anything about that before during the -- during your

2  deliberations; is that right?

3         THE JUROR:  No, I didn't.

4         THE COURT:  So then -- which it's the case that

5  there was a group of you, then, when you were leaving the

6  courtroom, you congregated or were discussing or seeing one

7  another, and it was at that time she mentioned that she had

8  gotten some text?

9         THE JUROR:  Yeah.  I believe it was somewhere -- it

10  must have been somewhere out here in the hallway or something,

11  because it was after we had deliberated.

12        THE COURT:  After you had decided the case?

13        THE JUROR:  Yeah.

14        THE COURT:  And the best you can recall is that it

15  sounded something -- you don't recall exactly what the juror

16  said, but to you, your conclusion was it sounded like some

17  type of spam or something along those lines?

18        THE JUROR:  Yeah.  I didn't think it had anything to

19  do with the case because, you know, I get suspicious texts all

20  the time, and I just disregard them.

21        THE COURT:  Sure.

22        THE JUROR:  I assumed it was something like that.

23        THE COURT:  And so you didn't hear about it until

24  after you had been discharged.  Is that fair to say?

25        THE JUROR:  Correct.

19

1          THE COURT:  Anything else from either side?

2          MS. BLANCO:  No, Your Honor.

3          MR. PEIA:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you.

5          You can be excused.  I apologize for the

6    inconvenience, but I appreciate that you came down.

7          And there is a way -- if you desire, there is a way

8    for you to be reimbursed, I think, for your parking and

9    mileage, and we just need to have you go over to the sixth

10   floor of the federal building, which is different from this

11   building, but the sixth floor of the federal building and the

12   reception and somebody named Tyler can help you out.

13          THE JUROR:  Thank you.

14          THE COURT:  Thank you very much for coming down.

15          We apologize for any inconvenience.

16          (Juror exits.)

17          MR. PEIA:  Your Honor, just for purposes of the

18   record and to make things simple, we're going to ask Tyler to

19   come over here.

20          THE COURT:  Oh, great.

21          MR. PEIA:  Juror number 2 has been escorted over to

22   the sixth floor, but after that, I'll get a text message and

23   my hope is that Tyler is over here to help the jurors.

24          THE COURT:  Oh, thank you.  Thank you for that

25   consideration.

20

1          So now we'll have 3 -- Juror 3 come in.

2          (Juror enters.)

3          THE COURT:  Thank you.

4          We have juror number 3.

5          Thank you for coming down.

6          I just have a few questions for you, but because

7   we're going to ask you a few questions, we need to swear you

8   in.

9          THE COURTROOM DEPUTY:  Please raise your right hand.

10         You do solemnly swear that the evidence you shall

11  give in the cause now before the court shall be the truth,

12  the whole truth, and nothing but the truth, so help you God?

13         THE JUROR:  I do.

14         THE COURTROOM DEPUTY:  Thank you.

15         THE COURT:  Thank you.  Just a few questions.

16         During your service as a juror in this courtroom,

17  did juror number 1 mention a text message that she had

18  received?

19         THE JUROR:  She did.

20         THE COURT:  And do you recall whereabouts in the

21  case that was?  Was that before the lawyers had made their

22  closing arguments or was it after?

23         THE JUROR:  Much before closing arguments.

24         THE COURT:  A little bit before?

25         THE JUROR:  I would say it was probably within the

21

1    first third of the case, so within, say, three days or four

2    days of starting.

3           THE COURT:  And do you recall what it was that she

4    said about it?

5           THE JUROR:  She showed me the message and let us

6    know that she had contacted you and informed about the text

7    message.

8           I think the name was Vanessa or something, the

9    contents of which sounded like a scam message that I think we

10   all get, and I quickly dismissed it.

11          I think the coincidence with maybe one of the

12   co-defendant's girlfriend also being from that same area in

13   Colorado and the name similarity, I think, caused some alarm.

14   But personally, I thought it was just pure coincidence.

15          THE COURT:  And so when she told you about it, when

16   you learned about it, had she indicated that she had already

17   brought it to the attention of the Court?

18          THE JUROR:  Yes.

19          THE COURT:  And were you outside in the hallway when

20   she told you about it?

21          THE JUROR:  I don't remember the exact location.

22          THE COURT:  Okay.  And so --

23          THE JUROR:  Well -- so one clarification.  She

24   showed me the message at the end of -- as we were walking out

25   after verdict was reached, and I was curious.  I was like,

22

 1    Well, let me see the message.

 2            But the first mention of it was earlier on, and I

 3    didn't see the message.

 4            THE COURT:  All right.  And you didn't see the

 5    message at that time?

 6            THE JUROR:  No.

 7            THE COURT:  But then you saw it as you were walking

 8    out?

 9            THE JUROR:  Yeah.

10            THE COURT:  So the first time -- do you recall the

11    first time it was ever mentioned?

12            THE JUROR:  The first time it was -- I don't

13    remember the exact day, but, like I said, I think it was

14    earlier on in the case.  It was definitely before closing

15    arguments, definitely before we deliberated.  Like I said,

16    probably within the first third of the case, maybe half, if

17    I'm being generous.

18            But that was -- it was mentioned in front of

19    multiple people.  I heard about it because someone else

20    mentioned, Oh, juror number 1 got a message, and then it

21    brought up a larger discussion, but --

22            THE COURT:  Okay.  So was this before there had been

23    any deliberations?

24            THE JUROR:  Yes.

25            THE COURT:  Just sort of informal conversation?

23

1          THE JUROR:  Yes.

2          THE COURT:  And do you know who else participated in

3     that conversation?  Was it just all -- many of you or --

4          THE JUROR:  There was a few where the event had been

5     brought up, and then I think people had different feelings

6     about it.  But it wasn't a substantial conversation.  We're

7     talking about just casual, you know, morning conversation or

8     maybe after lunch or something like that.

9          THE COURT:  Couple minutes?

10          THE JUROR:  It was a few minutes, yeah.

11          THE COURT:  And was the thought -- or what was your

12     thought about where it came from?

13          THE JUROR:  Yeah.  I mean, I'll reiterate that I, on

14     a daily basis, get just random text messages from people.

15     I think it's a common messaging scheme.  So for me, it was

16     purely coincidence, the name and location.  And I didn't think

17     it was -- I mean, but I understand the reason for raising the

18     -- you know, the issue, but I didn't think it was anything

19     that would warrant further action.

20          THE COURT:  And so you saw it -- you saw it when you

21     left the courtroom that day when the case was over?

22          THE JUROR:  That was the first time, because I was

23     curious.  I was, like, Let me see it, so I can see the text

24     messages back and forth.

25          And she had responded with some sort of inquiry

24

1     about, like, Who are you?  I don't know who you are, which I'm

2     unclear why she did that, but she did.  And then she's, like,

3     I don't know you.  Don't ever contact me again.  And she

4     blocked it.

5          And that was -- it was maybe six messages back and

6     forth.  But I'm sure she was able to provide the exact

7     screenshot of the message to this team.

8          THE COURT:  And did you perceive the text message to

9     be connected to this case?

10          THE JUROR:  Absolutely not.  And I made that clear

11     at the time.

12          THE COURT:  And due to the text message, did you

13     fear any retaliation against you from any individual if you

14     voted to acquit the defendant?

15          THE JUROR:  Absolutely not.  That did not factor

16     into the decision at all, did not come up in the deliberation.

17     I just want to state that.

18          THE COURT:  Sure.  And just a few more to follow up.

19          THE JUROR:  Yeah.

20          THE COURT:  Did you fear any retaliation against you

21     from any individual if you voted to convict the defendant?

22          THE JUROR:  No.

23          THE COURT:  Did you feel any intimidation or fear or

24     concern as a result of the text message at all?

25          THE JUROR:  No.

25

1          THE COURT:  Did the text message negatively impact

2     your ability to be fair and impartial?

3          THE JUROR:  No.

4          THE COURT:  And did the text message affect your

5     ability to follow the Court's jury instructions?

6          THE JUROR:  No.

7          THE COURT:  Sidebar?

8          (At sidebar.)

9          MS. BLANCO:  Thank you again, Your Honor.

10         I have three follow-ups.

11         When it was first discussed before they started

12    deliberating, did any of the jurors express any fear or

13    concern during that discussion?

14         And when -- I guess this is probably related when

15    juror number 1 brought it to his and everyone's attention, did

16    -- it's part of the same question -- did he sense fear or

17    concern?  And then, he mentioned I think he heard about it,

18    I think, through another juror?

19         THE COURT:  I thought he heard about it --

20         MS. BLANCO:  But not through juror number 1 was my

21    understanding.

22         MR. PEIA:  I thought he spoke to juror number 1.

23         MS. BLANCO:  I wanted to know who that person was

24    and what that person said about it.

25         THE COURT:  Okay.

26

1          MS. BLANCO:  Maybe I misunderstood.

2          THE COURT:  Anything else?

3          MS. BLANCO:  Thank you.

4          (End sidebar.)

5          THE COURT:  You mentioned -- do you recall how you

6    heard about it?  Were just -- like, who you -- did you hear

7    about it from Juror 1, or did you hear about it from a fellow

8    juror?

9          THE JUROR:  Initially, I heard about it from a

10   fellow juror because she had -- I'll just be honest.  I wasn't

11   close with juror 1.  You know, I wouldn't have had lunch with

12   her or whatever.

13         But the situation was brought up from -- by someone

14   else, and then it was spoken probably very shortly after in

15   front of juror 1 as well.

16         THE COURT:  And do you remember who you heard it

17   from?

18         THE JUROR:  Honestly, I don't.  I don't.

19         THE COURT:  And you didn't -- did anybody -- do you

20   recall anybody expressing fear about the message?

21         THE JUROR:  You know, I think there was a variety of

22   responses, but I don't think fear would be the right term.

23         I think it was just a little bit of awareness and

24   maybe some caution, particularly from Juror 1.

25         And I will say I don't think there was any attempts

27

1  to underestimate what it could be, you know.  So I wasn't

2  forward about trying to dismiss it to her because, you know,

3  I think she can react the way she wants to and feels

4  appropriate, but I don't think fear was a response, just

5  awareness.

6          THE COURT:  So juror number 1 brought it to the

7  attention of others; is that right?

8          THE JUROR:  Yeah.

9          THE COURT:  All right.  And so you didn't hear any

10  of the jurors express fear over the text message?

11          THE JUROR:  I did not.

12          THE COURT:  All right.

13          MS. BLANCO:  I'm sorry.  One question.

14          THE COURT:  You can come up again if you have

15  another question.

16          (At sidebar.)

17          MS. BLANCO:  Sorry, again.

18          THE COURT:  No worries.

19          MS. BLANCO:  I think the phrase in a Supreme Court

20  opinion was fear or concern.  He said he wouldn't describe it

21  as fear.  I wonder if anyone expressed concern since that was

22  the phrase used, fear or concern.

23          THE COURT:  All right.  You know, I guess the

24  concern, though -- I mean, I think -- you know, like what does

25  that mean?  You know, like somebody can be concerned I'm

28

1  getting, you know, these spam text messages and so, you know,

2  I'm trying to tie it to, you know, fear and intimidation or a

3  failure to be able to follow the instructions, you know,

4  because the concern -- I mean, I understand the language, but

5  everything is sort of case-specific.

6        And so concern -- I mean, hey, I could be concerned

7  I'm getting these text messages.  And so, like, what does that

8  tell us?  And we're going to talk to all 12.  And so I've

9  asked him -- I guess can you tell me, in particular, what

10  you're getting at, and then I can ask a more focused question

11  as opposed to general.

12        MS. BLANCO:  Sure.  He said he wouldn't describe it

13  as fear, so there was an issue there.

14        THE COURT:  Okay.

15        MS. BLANCO:  And so maybe just flesh out, like, what

16  that issue is.

17        MR. PEIA:  My concern, in addition to what the Court

18  had mentioned, is we're asking him to opine on the opinion of

19  others and need to be careful in doing that.

20        We are going to speak with all 12 jurors.

21        We've already spoken with juror number 1.

22        I understand the Court is phrasing in terms of

23  "express," but I think in asking the questions it needs to be

24  something overt from the juror --

25        THE COURT:  Because we're going to talk to all 12,

1  and I'm a little worried, like, this guy -- like, who knows --

2  nobody was nonchalant about it, but that's just his -- that's

3  his guess.  He's sitting in a room and that's what he thinks.

4          MS. BLANCO:  Maybe we ask if any juror told him they

5  were concerned, because they say to him --

6          MR. PEIA:  Then we would run into the same issues as

7  the Court raised in terms of what "concern" means.  It's a

8  very broad word.

9          MS. BLANCO:  My concern is there's something there.

10  I wouldn't describe it as fear.  What would you describe it

11  as?  What is that other issue that he hasn't discussed?

12          MR. PEIA:  He described it specifically as awareness

13  and caution.  I think he went into this already in terms of

14  when he discussed even the prima facie connection to the case,

15  so --

16          THE COURT:  All right.

17          MS. BLANCO:  Um -- okay.

18          And then, maybe the last issue, did juror number 1

19  indicate that, you know, she was maybe worried that it was

20  connected to the case because of the connection between

21  Colorado and Vanness --

22          THE COURT:  I think they wondered.  I think she

23  wondered, then didn't.

24          All right.  I understand.

25          MS. BLANCO:  Okay.  Thank you.

30

1          (End sidebar.)

2          THE COURT:  You mentioned that you wouldn't describe

3     it as fear, that you didn't see that anybody was fearful of

4     the text messages.  Is that a fair comment?

5          THE JUROR:  That is correct.

6          THE COURT:  For a period of time -- was there a --

7     I guess when you say you wouldn't describe it as that, what

8     would you describe?  Were people just sort of curious or --

9          THE JUROR:  I would say curiosity, entertaining, you

10    know, a comment a juror made and then sort of making their own

11    decision about the validity of it.

12          I've been really clear about where I stand with this

13    Court, and I think others were just similarly curious.

14          THE COURT:  Right.  Like, curious, like, Oh, is that

15    a coincidence, or things of that nature?

16          THE JUROR:  Exactly.  I mean, we're here for eight

17    hours a day.  This is all we're doing.  And then this comes

18    up, and it's, like, something to talk about.  That would

19    probably be the extent.

20          THE COURT:  All right.  All right.  Thank you.

21          THE JUROR:  All right.  Thank you so much.

22          THE COURT:  And I think if you wait outside, there

23    is a procedure for you to be reimbursed for your mileage and

24    fees.  So I think there is a procedure for someone to take

25    care of that outside.

31

1            Is that right?

2            MR. PEIA:  Correct, Your Honor.  Tyler is on his way

3    over.  If we can ask the juror to just wait outside, and Tyler

4    will --

5            THE COURT:  Yeah.  Someone is on their way, if you

6    want to be reimbursed.  It's not -- you're not going to retire

7    off of it, but it's --

8            THE JUROR:  I think I'm okay.  I'm only a mile away,

9    so --

10            THE COURT:  All right.  Thank you.

11            THE JUROR:  Thank you, Your Honor.

12            THE COURT:  Thank you very much.

13            (Juror exits courtroom.)

14            THE LAW CLERK:  One more?

15            THE COURT:  Yes.  Number 4.

16            (Juror enters courtroom.)

17            THE COURT:  Thank you.  Juror 4 has entered the

18    courtroom.

19            Thank you for coming down.  We apologize for any

20    inconvenience.  We thank you for your flexibility and being

21    able to come today.

22            I just have a few questions for you.

23            And because we're going to ask you a few questions,

24    we have to put you under oath.

25            THE COURTROOM DEPUTY:  Please raise your right hand.

32

1          You do solemnly swear that the evidence you shall

2    give in the cause now before the court shall be the truth,

3    the whole truth, and nothing but the truth, so help you God?

4          THE JUROR:  Yes.

5          THE COURTROOM DEPUTY:  Thank you.

6          THE COURT:  During your service as a juror in this

7    courtroom, did juror number 1 ever mention to you a text

8    message that she had received?

9          THE JUROR:  No.

10         THE COURT:  And were you -- did you ever learn --

11   were you present during any conversation or discussion about a

12   text message that juror number 1 may have received?

13         THE JUROR:  Yeah, after the trial.

14         THE COURT:  And so was the very first time that you

15   heard anything about a text message, was that after the case

16   had ended and you were discharged?

17         THE JUROR:  Yes.

18         THE COURT:  And where did you first hear about that?

19   Were you out in the hallway or in front of the courthouse

20   or --

21         THE JUROR:  We were outside of the building.

22         THE COURT:  Outside of the building?

23         And do you remember the context in which you --

24   were you all just sitting around sort of saying good-bye or --

25   I mean, standing around saying good-bye?

33

1      THE JUROR:  Yeah.  Yeah.  We were standing around

2  saying good-bye, waiting for juror number 1.  And a few of the

3  other jurors were, like, Oh, she's up there because she got a

4  weird text message.

5      THE COURT:  Okay.  And so you heard there was some

6  text message that she got, and then that's why she was delayed

7  getting to the group?

8      THE JUROR:  Yes.

9      THE COURT:  And then did she ever join the group?

10      THE JUROR:  Yes.

11      THE COURT:  And then is that -- did you ever hear

12  the -- see the contents of it?

13      THE JUROR:  No.  I wanted to ask, but I didn't want

14  to be too nosy.

15      THE COURT:  All right.  And so was that the extent

16  of it?  You didn't see anything or know anything about it?

17      THE JUROR:  No, I don't -- I didn't see the text.

18  I don't know what it said.  Just something about a weird text

19  message.

20      THE COURT:  And so you -- that's all you know, and

21  you didn't learn anything about it, the text message, until

22  after you had been discharged.  Is that fair to say?

23      THE JUROR:  Yes.  Yes.

24      THE COURT:  Okay.

25      (Begin sidebar.)

34

1           THE COURT:  Yes.

2           MS. BLANCO:  Did any of the jurors tell her that the

3    text message Juror 1 received may have related to the case?

4           That's it.

5           THE COURT:  Okay.  I guess -- because she's learned

6    about everything after.  I mean, she doesn't know a thing

7    until after the case is over.

8           MS. BLANCO:  Right.

9           THE COURT:  Based on what somebody else told her --

10   what difference does that make?

11          MS. BLANCO:  Distinctly, jurors after are still

12   saying it may have related to the case.

13          THE COURT:  Well, I mean, I guess we should ask them

14   that, though, right?  I mean --

15          MS. BLANCO:  Yeah.  Everyone's memory is different

16   and when they come in here how they describe things are

17   different.  But at the time that she heard them say that,

18   that's probative whether or not jurors thought it related to

19   the case if -- maybe they didn't say that and that's also

20   helpful.

21          THE COURT:  I guess, but, you know, now we're asking

22   sort of like what her description is of unknown people

23   outside, but I understand your question.

24          I'm not asking her -- I don't think it's necessary

25   to ask her whether this affected any of her ability to be fair

35

1    and impartial or to follow the instructions because she didn't

2    learn about it until after the case.  I think that would lose

3    her.

4              Your position?

5              MR. PEIA:  It's a memory test, Your Honor, at this

6    point, of what the defense is trying to set up.

7              Reality is we're going to talk with all jurors.  If

8    something like that came up, we'll have a chance to talk to

9    that juror.  But she didn't know anything until after a

10   verdict was rendered.

11             MS. BLANCO:  When we have witnesses, part of

12   impeachment is did other people see something or hear

13   something different at the time that you told someone else

14   this, was it a different version.  So if someone actually said

15   the words, she got a weird text message, that may have related

16   to the case, I do think it's very important.

17             THE COURT:  Well, I guess -- although -- I guess the

18   weight we put on that, I mean, that's a separate issue.  But

19   somebody could say, oh, she got -- like, if somebody knew

20   about it, right, maybe she's one of the people that showed

21   them the text message, she got some text message, she wondered

22   about whether it affects the case.

23             Who knows how they saw it?

24             But I understand your point.

25             MS. BLANCO:  Thank you, Your Honor.

36

1          THE COURT:  Thank you.

2          (End sidebar.)

3          Do you recall how long this conversation took place

4    when you were outside about the text message?

5          Do you remember, was that just a small part of the

6    conversation while you were saying your good-byes?

7          THE JUROR:  Yeah.  I don't remember exactly.

8          THE COURT:  And was it just -- did you ask a

9    question?  Because it was the first time you heard something

10   about a text message; is that right?

11         THE JUROR:  Yeah.

12         THE COURT:  And do you recall what you said?

13         THE JUROR:  Yeah.  I was basically, like, you know,

14   who was it from?  What was it about?

15         I do remember now they said something about a

16   Colorado number.

17         THE COURT:  And someone said, Oh, it's about a

18   Colorado number?

19         THE JUROR:  Yeah.  It was from a Colorado number, so

20   she's, like, weird about that or, like, wants to ask about it

21   or tell the judge about it.

22         THE COURT:  Is that all you remember what the people

23   said?

24         THE JUROR:  Yeah.  I don't remember if they told me

25   what was in the text.

37

1          It was just a Colorado number, and she --

2          THE COURT:  Wanted to tell the Court?

3          THE JUROR:  Yeah, told the Court about it, and they

4    were waiting for her to tell the judge or tell the clerk.

5          THE COURT:  Is that all you remember about the text

6    message?

7          THE JUROR:  I'm trying to think.  Maybe something

8    about, like, did the -- it's hard to remember.

9          THE COURT:  Sure.

10          THE JUROR:  But --

11          THE COURT:  And all of this occurred after the case

12    was over; is that right?

13          THE JUROR:  Yes.  Yes.  Definitely after the case,

14    yeah.

15          THE COURT:  All right.  Anything else that you can

16    -- was that a small part of the conversation while you were

17    saying your good-byes?

18          THE JUROR:  Yeah, really.  Because we're, like, kind

19    of -- it was a pretty big trial, so we're kind of like, Oh, my

20    God, that was so crazy.

21          THE COURT:  And were there many of you there?

22          THE JUROR:  No.  There was only a few, maybe, like,

23    four or five of us.  Like, juror number 3 and 7, for sure,

24    were there.  I don't remember the other juror numbers, but

25    there was a few of us.

38

1          THE COURT:  All right.  And have you shared with us

2    everything that you can remember about that event?

3          THE JUROR:  Yeah.  I just remember they were like,

4    Oh, she's freaked out about this text she got.  I'm trying to

5    remember if they told me what was on the text, but I can't

6    remember.  Sorry.

7          THE COURT:  All right.  And you think it was Juror 3

8    and 7 that were there?

9          THE JUROR:  Yeah, yeah.  They were definitely there.

10          THE COURT:  Okay.

11          THE JUROR:  I remember that.  And I just can't

12    remember the other juror's number who was there.

13          THE COURT:  Okay.

14          All right.  Anything else?

15          MS. BLANCO:  No, Your Honor.  Thank you.

16          MR. PEIA:  No, Your Honor.  Thank you.

17          THE COURT:  All right.  Thank you.

18          (Juror exits courtroom.)

19          THE LAW CLERK:  Number 7.

20          THE COURT:  Yes.

21          (Next juror enters courtroom.)

22          You can just come forward to the jury box.  I just

23    have a few questions for you.

24          Because I'm going to ask you some questions, we just

25    have to swear you.  Thank you.

39

1          THE COURTROOM DEPUTY:  Please raise your right hand.

2          You do solemnly swear that the evidence you shall

3    give in the cause now before the court shall be the truth,

4    the whole truth, and nothing but the truth, so help you God?

5          THE JUROR:  I do.

6          THE COURTROOM DEPUTY:  Thank you.

7          THE COURT:  Thank you.

8          During your jury service as a juror in this

9    courtroom, did juror number 1 ever mention to you a text

10    message that she may have received?

11          THE JUROR:  Yes.

12          THE COURT:  And do you recall when that was in the

13    process?  Was it before the lawyers made their closing

14    arguments or after?  Do you remember?

15          THE JUROR:  I think it was after.

16          THE COURT:  And do you recall how -- how did you

17    learn about it?  Were you in a small group or was it all of

18    you together?

19          THE JUROR:  It was in the juror room, and she --

20    I was one of the groups -- one of the group of people that

21    directly received her telling us.  I think everyone was in the

22    room at that time.

23          THE COURT:  Were you taking a break and there was

24    just a small group of you talking?

25          THE JUROR:  I think so.

40

```
1              THE COURT:  All right.  And do you recall what it --
2     what she showed -- did she show it to you or just describe it
3     to you?
4              THE JUROR:  She did show it to me.
5              THE COURT:  And then you had a chance to read it?
6              THE JUROR:  Yes.
7              THE COURT:  And then what did you -- did she ask you
8     your opinion?  Or what did she ask you, and what did you say,
9     if you can recall?
10             THE JUROR:  She asked if I thought it was something
11    to be concerned about, and I said no.
12             THE COURT:  And was there somebody else with you at
13    the time, or did she just tell you that individually?
14             THE JUROR:  It was me and a couple of other people
15    standing around.  I don't remember who the other people were,
16    though.
17             THE COURT:  And so she asked you should she be
18    concerned, and you said no?
19             THE JUROR:  Yes.
20             THE COURT:  And did you perceive the text message to
21    be connected to this case?
22             THE JUROR:  No.
23             THE COURT:  Due to the text message, did you fear
24    retaliation against you from any individual if you voted to
25    acquit the defendant?
```

41

1          THE JUROR:  No.

2          THE COURT:  Due to the text message, did you fear

3    any retaliation against you from any individual if you voted

4    to convict the defendant?

5          THE JUROR:  No.

6          THE COURT:  Did you feel any intimidation or fear or

7    concern as a result of the message?

8          THE JUROR:  No.

9          THE COURT:  Did the text message impact your ability

10   to be fair and impartial?

11         THE JUROR:  No.

12         THE COURT:  Did the text message affect your ability

13   to follow the Court's jury instructions?

14         THE JUROR:  No.

15         THE COURT:  Ms. Blanco?

16         MS. BLANCO:  Very briefly.

17         THE COURT:  Sure.

18         (Sidebar.)

19         MS. BLANCO:  Thanks.  Three questions.

20         How many times did juror number 5 discuss --

21         THE COURT:  Juror 5?

22         MS. BLANCO:  Are we on Juror 5?

23         THE COURT:  Juror 7.

24         MS. BLANCO:  7, sorry.

25         THE COURT:  Are you talking about this juror?

42

1           MS. BLANCO:  This juror, yeah.

2           Sorry.  I just wrote down the wrong number.

3           How many times did Juror 7 discuss the text message

4   with any other jurors before the verdict?

5           How long were those discussions?

6           And did any jurors discuss the text message during

7   deliberations?

8           MR. PEIA:  We're fine on all those except for the

9   last one, discussions during deliberations, and it's for the

10  reasons the Court initially brought up and the reasons the

11  defendant objected to, it's going to the mental processes of

12  deliberations, which is likely to yield a 606(b) issue.

13          The others we're fine with, but the discussions

14  during deliberations are a problem.

15          MS. BLANCO:  I think if -- the issue is you can't

16  get into other -- you know, if they would have voted

17  differently then I would not touch that, that you can't --

18  that's the deliberative process, but the fact of it being

19  discussed is something that I think the Court must consider.

20          THE COURT:  Well, I can ask if they did discuss --

21  I understand the Government's concern, but at the end of the

22  day, if -- and I'm respectful certainly of what the rules are,

23  but if at the end of the day I ask something and if it does,

24  you know, violate one of the rules of evidence, the remedy is

25  I don't consider it, right?

43

1           What I think we're all trying to avoid is not

2     getting something in the record and then if it goes up on

3     appeal then the Court of Appeals says, well, you should have

4     asked this.

5           MR. PEIA:  Okay.

6           THE COURT:  I think it's easier to ask and then not

7     consider it or even if I do consider it and then a reviewing

8     court can say, well, you shouldn't have considered that.

9     That's an easier circumstance than not.

10          MR. PEIA:  Okay.

11          THE COURT:  So to the extent I'm trying to err on

12    the side, I'm trying to be respectful of what the cases say

13    but also err on the side of including the questions of the

14    record as opposed to being the other way.

15          MR. PEIA:  Thank you, Your Honor.

16          THE COURT:  Thank you.

17          (End sidebar.)

18          THE COURT:  Do you recall, did you have just a

19    single discussion about this text with juror number 1?

20          You know, you told us that she showed it to you.

21    And then, you know, I think you told us what you thought.

22          And you thought it was -- well, why don't you tell

23    us what you thought.

24          THE JUROR:  Well, so there was that conversation.

25    And then, because I believe that was after the closing

44

1    arguments and we were getting ready to leave, all of us, and I

2    think myself and a couple of other jurors said, I don't think

3    this is related, but if you feel like it's related, you should

4    probably say something to the clerk or somebody, and then I

5    think that concluded our discussion about it.

6             THE COURT:  And so you -- do you recall when it

7    was -- the first time it was brought up to you by juror

8    number 1, do you remember when that was?

9             THE JUROR:  Yes.  I believe it was after the closing

10   arguments, before we left for the final day.

11            THE COURT:  Okay.  And then you saw -- you saw the

12   message, and then you shared your thoughts with juror

13   number 1; is that right?

14            THE JUROR:  Yes.

15            THE COURT:  And your thoughts were it wasn't

16   connected; is that correct?

17            THE JUROR:  Yes.

18            THE COURT:  And then, when is the next time that

19   that topic came up, the text?  Was it after the case, after

20   you were discharged?

21            THE JUROR:  Yes.  A few of us were planning to grab

22   a drink together at a nearby spot, and so we had to wait for

23   her because she said that she was going to go talk to

24   somebody.  So that was right before -- after we all let out.

25            THE COURT:  And so did you have any conversation

45

1  with anybody other than Juror 1 about that text message before

2  you were discharged?

3          THE JUROR:  Not separately.  Because there were

4  other people standing around, in the first instance.

5          We all kind of looked at each other, so kind of.

6          THE COURT:  Right.  And the next time that you heard

7  anything about this, the text message, was that after the case

8  was over and you had been discharged?

9          THE JUROR:  Yes.

10         THE COURT:  All right.

11         Ms. Blanco?

12         MS. BLANCO:  Nothing further, Your Honor.  Thank

13 you.

14         THE COURT:  No additional questions?

15         MS. BLANCO:  No, Your Honor.

16         THE COURT:  Thank you.

17         All right.

18         Anything else -- so you may be excused.  Thank you.

19         And I think there is a procedure for you to be

20 reimbursed for your parking and mileage, and we thank you very

21 much for coming down.

22         THE JUROR:  Okay.

23         (Juror exits courtroom.)

24         MR. PEIA:  Your Honor, Tyler's outside to help the

25 jurors.

46

1          THE COURT:  Great.  Thank you.

2          Okay.  Number 9.

3          (Juror enters courtroom.)

4          All right.  So we have juror number 9.

5          Thank you for coming down.  I apologize for any

6  inconvenience.

7          You can just sit right in the jury box.  I have just

8  a few questions for you.  And because I'm going to ask you

9  some questions, we're going to give you an oath.

10          THE COURTROOM DEPUTY:  Please raise your right hand.

11          You do solemnly swear that the evidence you shall

12  give in the cause now before the court shall be the truth, the

13  whole truth, and nothing but the truth, so help you God?

14          THE JUROR:  I do.

15          THE COURTROOM DEPUTY:  Thank you.

16          THE COURT:  During your service as a juror in this

17  courtroom, did juror number 1 ever mention to you a text

18  message that she may have received?

19          THE JUROR:  No.

20          THE COURT:  And did you ever hear anything

21  throughout the case about -- while you were hearing evidence

22  or in deliberation, did you ever hear anything about a text

23  message that Juror 1 may have received?

24          THE JUROR:  No.

25          THE COURT:  And after you had been discharged, did

47

1    you ever hear anything from your fellow jurors or anybody

2    about a text message?

3                THE JUROR:  No.

4                MS. BLANCO:  No, Your Honor.  Thank you.

5                MR. PEIA:  Nothing further, Your Honor.

6                THE COURT:  I don't have any additional questions,

7    and so sorry for the inconvenience.

8                And there is a procedure for you to be reimbursed

9    for your parking and mileage today.

10               Thank you, sir.

11               THE JUROR:  Thank you.

12               (Juror exits courtroom.)

13               THE COURT:  And then we have number 12; is that

14   right?

15               THE LAW CLERK:  Yes.

16               (Juror enters courtroom.)

17               THE COURT:  If you could come forward to the jury

18   box, sir.  I just have a few questions for you.

19               And because we're going to question you, I have to

20   put you under oath.

21               THE COURTROOM DEPUTY:  Please raise your right hand.

22               You do solemnly swear that the evidence you shall

23   give in the cause now before the court shall be the truth,

24   the whole truth, and nothing but the truth, so help you God?

25               THE JUROR:  I do.

48

1          THE COURTROOM DEPUTY:  Thank you.

2          THE COURT:  During your service as a juror in this

3    courtroom, did juror number 1 ever mention to you a text

4    message that she may have received?

5          THE JUROR:  Yes.

6          THE COURT:  And do you recall about when in the case

7    you first heard about the text message?

8          THE JUROR:  I believe it was after the conclusion of

9    the case.

10          THE COURT:  And so would that have been after you

11    had left the courtroom and you had been discharged?

12          THE JUROR:  Yes.

13          THE COURT:  And so is it fair to say you never heard

14    of it during your discussions about the case or when the

15    evidence was being given?

16          THE JUROR:  Yes.

17          THE COURT:  And so do you remember where you

18    physically were when you first heard about this text message?

19          THE JUROR:  I recall being in the juror lounge.

20          THE COURT:  And so that was -- was that after you

21    had been discharged and you were getting your personal

22    possessions to leave?

23          THE JUROR:  Correct.

24          THE COURT:  And did you hear about it from her or

25    from others?

49

1          THE JUROR:  From her.

2          THE COURT:  And what did she say?

3          THE JUROR:  I recall receiving -- or I recall she

4    received a text, the subject matter of which essentially

5    being, "Do you remember me?" and containing a name that may

6    have been relevant to someone in the case, but I've forgotten,

7    essentially.

8          THE COURT:  And did she say anything about it to

9    you?  Or did she say she was remaining behind?  Or what did

10   she say?

11         THE JUROR:  She informed me of her intent to notify

12   Mr. Bastille about it.

13         THE COURT:  All right.  And did she say anything

14   else about it?

15         THE JUROR:  No.

16         THE COURT:  And did she say that -- had you made and

17   some of your other jurors made arrangements to meet outside,

18   or were you going to meet together or maybe go have a drink

19   together or something like that?

20         THE JUROR:  Yes.

21         THE COURT:  And so did it come up in the context,

22   Well, I'm going to be late because I need to do something?

23         Is that how it came up?  Or do you remember?

24         THE JUROR:  I recall discussing the text with her

25   after the case.  And then because I had stayed behind, you

**50**

1   know, delayed by this conversation, I then informed people who

2   were waiting outside the courthouse the juror may be late to

3   any arrangements.

4           THE COURT:  Because of the text message?

5           THE JUROR:  Yes.

6           THE COURT:  All right.  And when she showed you the

7   text message, was there anybody else there other than you?

8           THE JUROR:  I don't think so.

9           THE COURT:  And was that the very first time the

10  text message ever came up, the first time you ever learned of

11  it?

12          THE JUROR:  Yes.

13          THE COURT:  All right.

14          MS. BLANCO:  Very briefly, Your Honor.

15          THE COURT:  Sure.

16          (Begin sidebar.)

17          MS. BLANCO:  Thank you.

18          Did juror number 1 tell him why she was going to

19  notify either you or your clerk about the text message?

20          MR. PEIA:  As long as it's specific to what juror

21  number 1 told him, no objection.

22          THE COURT:  Okay.  Thank you.

23          MS. BLANCO:  Thank you.

24          (End sidebar.)

25          THE COURT:  While you were in the jury room, my

51

1    understanding is juror number 1, she showed you the text on

2    her phone?  Did she show it to you on her phone?

3                THE JUROR:  I think so, yes.

4                THE COURT:  And did she tell you that she was

5    waiting behind because she wanted to tell the bailiff?

6                THE JUROR:  Yes.

7                THE COURT:  Did she tell you why she was telling the

8    bailiff or if she just -- can you remember what she told you?

9    Other than, you know, communicating to you she was going to

10   tell the bailiff, did she add anything else other than that,

11   that you can remember?

12               THE JUROR:  She initially asked me if -- I think the

13   phrasing was something like, Is this anything?  Which I

14   suspect means, Is this text somehow concerning?  And we spoke

15   briefly -- maybe you should tell the bailiff -- but

16   ultimately, nothing of any substance was discussed, really.

17               THE COURT:  And was it your suggestion, Maybe you

18   should tell the bailiff?

19               THE JUROR:  No.  I don't remember influencing her

20   one way or another on that decision.

21               THE COURT:  All right.  And that's the best

22   recollection you have of the entire conversation?  Is that

23   fair to say?

24               THE JUROR:  Yes.

25               MS. BLANCO:  Nothing further, Your Honor.

52

1          Thank you.

2          MR. PEIA:  Nothing further.  Thank you.

3          THE COURT:  All right.  Thank you.

4          Thank you for coming down.

5          Thank you for the --  you know, your flexibility.

6     And I don't have any additional questions.

7          And I think there is a procedure for you to get, you

8     know, reimbursed for your parking or mileage or things of that

9     nature.  But I appreciate you -- your flexibility coming down

10    here.  And again, thank you very much.

11         (Juror exits courtroom.)

12         I think those are the ones we have for now, for

13    today.  My understanding is that we have -- did we do number 4

14    yet?  Let me see --

15         THE COURTROOM DEPUTY:  Yes, Your Honor.  We did

16    number 4.

17         THE COURT:  That's right.

18         So that's all for the day.

19         So we have four -- on Monday, then, we have juror

20    number 5, 6, 8, and 11.  Is that correct?

21         And then the other one that we have is just -- we

22    have to get a separate date for number 10.  And we'll see if

23    we can get 10 on --

24         (Pause in proceedings.)

25         Counsel, do you have 9:00 on the 21st?

1          What's the 21st look like?

2          I can always do it in the afternoon if I had to.

3          You know, these have been relatively brief.  And so

4   I have something else at 9:00, but I can move that back a few

5   minutes.

6          So does 9:00 on the 21st work, if that date works

7   for Juror 10?

8          MS. BLANCO:  I believe so.

9          For some reason, that date sounds familiar, but I

10  don't have anything in my calendar, so I think it works.

11          THE COURT:  All right.  And so if you find out that

12  there's a reason why you think it's familiar, then let us know

13  today.

14          MS. BLANCO:  I will, of course, Your Honor.

15          THE COURT:  And we'll check with -- we'll do the

16  best -- well, why don't you -- has the Government been the one

17  that's been checking with the jurors to get the dates?

18          MR. PEIA:  We have.  But Juror 10 is the one that

19  said that he was not able to make May 16th or May 19th.

20          And in response, we instructed him to contact the

21  Court for a date, and we haven't heard from him after that

22  point.

23          THE COURT:  I don't think we have, either.

24          Have we?  Have we heard from him?

25          THE COURTROOM DEPUTY:  Yes.  I did speak to him.

54

1          THE COURT:  And what did he say?

2          THE COURTROOM DEPUTY:  We didn't talk about a

3   different date.

4          THE COURT:  Okay.  All right.  We'll contact him.

5          Apparently, he did contact us, but we weren't able

6   to give him any update because we didn't really know what the

7   next date would be.

8          And so what we're going to do is we'll -- the clerk

9   will contact him, and we'll see if he has May 21st at 9:00

10  available, and then -- so hopefully, we'll go with that, and

11  I'll know certainly by Monday.  The next time you're here,

12  we'll know whether or not that date's going to work or not.

13          So at this point, thank you for your appearances.

14          We'll see you back Monday, May 19th, at 9:00 a.m.

15          Thank you.

16          MS. BLANCO:  Thank you, Your Honor.

17          MR. PEIA:  Thank you, Your Honor.

18          MS. BLANCO:  I'm sorry, Your Honor.

19          Can I ask if on Monday, after the Court -- if the

20  marshals can maybe keep Mr. Patron around for an extra half

21  hour so we can meet with him and the interpreter, just to

22  explain everything to him?

23          Because it's hard to get interpreters out --

24          THE COURT:  You know, I'll ask the marshals, but I

25  don't know -- because it's a Monday, I don't know if they can

55

1   accommodate.  They do if they can, but I'm hesitant to order

2   them because I don't know their staffing, and Monday's a busy

3   day.

4           MS. BLANCO:  Understood, Your Honor.

5           THE COURT:  But generally they're willing to

6   accommodate if they can.

7           MS. BLANCO:  Understood.

8           I appreciate it, Your Honor.

9           THE COURT:  Fair enough.

10      (Adjourned at 10:09 a.m.)

11               *     *     *     *

12           Certificate of Official Reporter

13  I certify that the foregoing is an accurate transcript of the

14  record of proceedings held in the above-entitled matter.

15

16  s/Koretta Stanford_____
    Official Court Reporter

17  United States District Court
    Southern District of California        Date:  07/03/2025

18

19

20

21

22

23

24

25