MEGHAN BLANCO (238171)
LAW OFFICES OF MEGHAN BLANCO
28202 Cabot Road, Suite 300
Laguna Niguel, California 92677
Telephone:  (949) 296-9869
Facsimile:  (949) 606-8988
E-mail:  mblanco@meghanblanco.com

Attorney for BRIAN ALEXIS PATRON LOPEZ

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-CR-1683-WQH |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| BRIAN ALEXIS PATRON LOPEZ, | |
| Defendant. | |

Brian Alexis Patron Lopez, by and through his counsel of record, hereby files the instant sentencing memorandum.

Respectfully Submitted,

Dated: December 4, 2025

  __//s// Meghan Blanco_____
MEGHAN BLANCO
Attorney for
BRIAN ALEXIS PATRON LOPEZ

1

MEMORANDUM OF POINTS AND AUTHORITY

## I. INTRODUCTION

The government and probation recommend that Brian Patron be sentenced to life imprisonment. In the federal system, life means death in custody.

This case presents a sentencing posture in which the statutory goals of punishment, deterrence, proportionality, and rehabilitation can all be met without imposing a sentence that ensures Mr. Patron will die in federal custody. The government seeks the functional equivalent of life without parole for the crimes of an 18-year-old with no prior law-enforcement contact, no arrests, and no criminal convictions. In the federal system—where parole has been abolished—such a sentence is irrevocable, extinguishing not only liberty but any opportunity for rehabilitation.

Such a sentence would make Mr. Patron the only participant in this event to receive an LWOP-equivalent outcome, despite being among the youngest and one the only individuals with no prior criminal justice contact of any kind. It would result in a categorical, not incremental, disparity: all codefendants will be released, including the original organizer, C004 who received 140 months.

A sentence of 240 months—while below the statutory mandatory minimum for counts 2 and 3—is severe, punitive, proportionate, avoids unconstitutional disparity, and maintains constitutional youth protections under *Roper v. Simmons*, *Graham v. Florida*, and *Miller v. Alabama*.

## II. DISPARITIES BETWEEN DEFENDANTS

### A. Codefendant Sentences

The PSR confirms the following outcomes:

- C002 – 60 months
- C001 – 110 months
- C003 – 125 months
- C004 (planner/organizer) – 140 months

2

Every other participant will return home. Only Mr. Patron faces the prospect of never doing so.

Under 18 U.S.C. § 3553(a)(6), a sentence must avoid unwarranted disparity among defendants with similar culpability. Here, the disparity is absolute: all others will reenter life except Mr. Parton.

### B. Government Arrest Sequencing Created All Cooperation Pathways

All codefendants were arrested first, offered cooperation, reduction avenues, and leverage long before Mr. Patron was even brought into the case. By the time of his arrest, every cooperation path had been consumed; every narrative established.

This is not a culpability-driven sentencing split; it is a disparity manufactured by timing. The government's charging sequence determined who had access to cooperation mechanisms and mitigating leverage. Sentencing should not, under § 3553(a) or any conception of proportionality, turn on who happened to be arrested first and who was brought in only after every pathway to reduction had been exhausted. A just sentence must recognize that the differential here is not rooted in comparative culpability,[1] but in the government's own sequencing decisions.

### C. The Sentencing Disparity Is Extreme, Unwarranted, and Solely a Function of Mr. Patron Exercising His Right to Trial

Every codefendant—each of whom stands on identical legal footing given the general verdict form (ECF 325]—is on track to be released in the coming years. One may already be out. None is facing anything resembling life imprisonment. The only difference, factually and legally, is that they entered plea agreements and Mr. Patron exercised his Sixth Amendment right to trial.

---

[1] *See* ECF 325 (general verdict form). The government declined defense counsel's request for a special verdict form that would have permitted the jury to make individualized culpability findings and thereby differentiate relative responsibility among the defendants.

3

The government theorized that Mr. Patron was the shooter, but the jury was *not asked to find that*. There was no special verdict, no unanimity instruction distinguishing him from the others. Thus, the verdict places him at precisely the same culpability level as his codefendants—and § 3553(a)(6) forbids a sentencing court from creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Here, the disparity is not routine. It is constitutionally punitive. *United States v. Jackson*, 390 U.S. 570 (1968) prohibits the imposition of penalties that chill or punish the exercise of trial rights. A sentence that ensures lifelong incarceration for the only defendant who went to trial, while those who pled return to free society, is precisely the type of corrosive "trial penalty" that the Constitution prohibits.

    III.    Imposing a De Facto Life Sentence for the Crimes of an 18-Year-Old Violates Eighth Amendment Proportionality Principles

At the time of the offense, Mr. Patron was only 18 years old. The day after the government believes he participated in the killing, he put on his high-school uniform and attended a full day of classes. That juxtaposition is not put forth to minimize the gravity of the conduct, but rather to reflect the developmental reality of late adolescence: an 18-year-old can move between impulsive, peer-driven decisions and ordinary juvenile routine without appreciating the moral and legal consequences in the way an adult would. Unlike his codefendant C004., Mr. Patron completed high school and did so with passing grades, further underscoring that he was situated in a school-based, adolescent environment rather than an adult criminal one.

The Supreme Court has repeatedly held that late adolescence carries constitutional consequence: it is a developmental period marked by diminished culpability, susceptibility to peer pressure, and ongoing neurological formation. *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v.*

4

*Alabama*, 567 U.S. 460 (2012). These cases do not turn on the technical age of majority, but on the science demonstrating that core executive functions—including impulse control, risk assessment, and long-term judgment—continue to mature into the mid-twenties. *See* Laurence Steinberg, Ph.D., *Age of Opportunity*; APA Amicus in *Roper* and *Miller*.

These authorities confirm that youth is *mitigating as a matter of constitutional law*, not merely as a matter of discretionary compassion. The Eighth Amendment requires sentencing courts to meaningfully account for the developmental features that distinguish youth from adults—immaturity, transience, vulnerability to influence, and capacity for change. *Miller*, 567 U.S. at 476 ("Children are constitutionally different for sentencing purposes.").

A life sentence—especially in the federal system's post-parole landscape—is the harshest punishment available short of death, and the Court has cautioned it must remain rare and reserved for those whose crimes reflect irreparable corruption. There has been no such finding here. Nothing in the record supports the conclusion that Mr. Patron is incapable of rehabilitation. To the contrary, the absence of any criminal history or prior law-enforcement contact demonstrates the opposite: this was a singular, deeply tragic episode in an otherwise law-abiding life.

B.  The Government Has Produced No Evidence of Prior Criminal Conduct, Law-Enforcement Contact, or Any Pattern of Violence

In evaluating proportionality, the Court must consider not only the nature of the offense but also the character and record of the offender. The government has offered no evidence—none—suggesting that Mr. Patron has ever before engaged in violence, criminal activity, or even been stopped, questioned, or cited by law enforcement. He is not before the Court as a repeat offender, a career defendant, or someone with

escalating violent conduct. He was, in the record as it stands, a teenage criminal without any documented history of criminality.

That matters as a constitutional and statutory principle. The Supreme Court's youth cases specifically reject the presumption that adolescent involvement in serious conduct constitutes permanent moral identity. Adolescents are more capable of change than are adults, *Miller*, 567 U.S. at 471, and their actions rarely reflect irretrievably depraved character. *Roper*, 543 U.S. at 570.

A sentence that punishes the actions of an 18-year-old with death in prison while offering no regard for his adolescent development, collapses youth into adulthood in direct tension with constitutional doctrine and modern developmental science.

D. A Meaningful Opportunity for Release Is Constitutionally Required

*Graham* mandates that youth offenders must receive a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75. In the federal system, where parole has been eliminated, the denial of any realistic release mechanism *is* the denial of that constitutional guarantee. A sentence that carries no possibility of release until death is, functionally and legally, life without parole.

To impose such a sentence on an individual who:

- has no prior law-enforcement contacts,
- no juvenile adjudications,
- no prior arrests,
- no other criminal convictions,
- and whose developmental profile places him squarely in the cohort deemed *most capable of reform*,

would be to treat him as the rare, constitutionally-permissible irretrievably depraved youth without any evidentiary basis.

//

//

## VII. AGENT CHARACTERIZATIONS IN THE PSR

The PSR quotes an agent describing Mr. Patron as a "psychopath" who sought his "first kill" and aspired to be a "sicario." While Mr. Patron does not dispute that the PSR accurately reflects the agent's phrasing, he respectfully submits that neither the Court nor the Bureau of Prisons should accept those characterizations as fact. No clinician evaluated Mr. Patron; no mental-health professional diagnosed him; no expert testimony was offered; and no reliability safeguards—Daubert or otherwise—were applied. These statements are not findings, but untested opinion and sensational conjecture. Mr. Patron therefore asks that the Court strike or disregard the inflammatory language as improper and lacking evidentiary foundation.

## VIII. TWENTY YEARS IS SEVERE AND EXCEEDS EVERY CODEFENDANT'S SENTENCE

A sentence of 240 months:

- exceeds every codefendant by 8–15 years
- surpasses the planner's 140-month sentence
- addresses gravity, deterrence, punishment
- avoids constitutional trial-right distortion

This does not minimize harm—it prevents inversion: the youngest defendant becomes the only defendant without a future.

## IX. RESTITUTION

Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered, payable through IFRP while incarcerated, and thereafter as set by the Court.

## IV.  CONCLUSION

This Court must evaluate not only punishment but fairness. Youth—especially barely-legal youth—must constitutionally count. The record shows a young man with no prior criminal history, no prior law-enforcement exposure, and every empirical indicator of rehabilitation potential.

7

The Eighth Amendment requires that he be afforded a *chance* to demonstrate maturation, change, and redemption—not condemned to die in a system that no longer offers parole. And § 3553(a)(6) forbids a sentencing outcome in which the sole predicate for a life term is that Mr. Patron did what the Constitution entitles him to do: insist on a jury.

A sentence that offers Mr. Patron a meaningful opportunity for release, one proportionate to both his youth and to the sentences of those who stood beside him, is not only wise—it is constitutionally compelled.

Respectfully Submitted,

Dated: December 4, 2025

                                          __//s// *Meghan Blanco*_____
                                          MEGHAN BLANCO
                                          Attorney for
                                          BRIAN ALEXIS PATRON LOPEZ